```
 1                  UNITED STATES BANKRUPTCY COURT
                    EASTERN DISTRICT OF NEW YORK
 2    ------------------------------X
      In Re the Matters of:         :    1-19-46591-jmm
 3                                   :
          ASHMEEN MODIKHAN,         :
 4                                   :    Brooklyn, New York
                          Debtor.    :    September 1, 2021
 5    ------------------------------X
```

```
 6      [212] ORDER SCHEDULING IN-PERSON HEARING FOR INSPECTION OF
         PROMISSORY NOTE.(RE: RELATED DOCUMENT(S)49,200. SIGNED ON
 7    8/23/2021. IN-PERSON [200] ORDER DIRECTING PARTIES TO CONFER
      RESPECTING INSPECTION OF PROMISSORY NOTE. IT IS ORDERED, THAT
 8      BY WEDNESDAY AUGUST 18,2021, DEBTOR AND RUSHMORES COUNSEL
       SHALL CONFER TO ARRANGE A MUTUALLY AGREEABLE TIME AND PLACE
 9    FOR THE DEBTOR TO INSPECT THE NOTE; AND THAT RUSHMORE AND THE
       DEBTOR SHALL ADVISE THE COURT OF THE ARRANGEMENTS FOR NOTE
10    INSPECTION AT THE TELEPHONIC HEARING SCHEDULED FOR AUGUST 19,
      2021 AT 10:30 A.M.; AND IT IS FURTHER ORDERED, IF THE PARTIES
11     CANNOT AGREE ON A PROCEDURE FOR NOTE INSPECTION, THE COURT
      MAY DIRECT WHEN AND WHERE THE NOTE WILL BE MADE AVAILABLE FOR
12     INSPECTION(RE: RELATED DOCUMENT(S)49). SIGNED ON 8/13/2021.
          TELEPHONIC [49] MOTION FOR RELIEF FROM STAY AS TO THE
13       PROPERTY LOCATED AT 8710 149TH AVENUE, HOWARD BEACH, NY
         11414. [128] MOTION TO STRIKE EXHIBITS BY RUSHMORE LOAN
14     MANAGEMENT SERVICES, LLC RELATING TO TRANSFERS OF PROOF OF
       CLAIM 6-1. [90] OBJECTION TO PROOF OF CLAIM #6-1 TIKI SERIES
15     IV TRUST FILED BY ASHMEEN MODIKHAN (ATTACHMENTS: #1 EXHIBIT
      EXHIBIT 1 #2 EXHIBIT EXHIBIT 2 #3 EXHIBIT EXHIBIT 3 THROUGH 8
16     #4 EXHIBIT EXHIBIT 9 THROUGH 12 #5 EXHIBIT EXHIBIT 13 #6
        EXHIBIT EXHIBIT 14) FILED VIA ELECTRONIC DROPBOX (JJK)
17              BEFORE THE HONORABLE JIL MAZER-MARINO
                  UNITED STATES BANKRUPTCY JUDGE
18

19    APPEARANCES:
      For Creditor, Board:     BORAH GOLDSTEIN ALTSCHULER NAHINS
20    Of Managers of the       & GOIDEL, P.C.
      Patchogue Homes Corp.    BY:  JEFFREY CHANCAS, ESQ.
21    Condominium No. 2        377 Broadway
      (via telephone)          New York, NY  10013
22
      For Rushmore Loan        FRIEDMAN VARTOLO, LLP
23    Servicing:               BY:  KATHERINE HEIDBRINK, ESQ.
                               85 Broad St., Suite 501
24                             New York, NY  10004

25
```

1    APPEARANCES CONTNUED:

2

3    For Rushmore Loan          WOODS OVIATT GILMAN
     Servicing:                 BY: MICHELE BONSIGNORE, ESQ.
4                               1900 Bausch & Lomb Place
                                Rochester, NY  14604
5
     Debtor:                    ASHMEEN MODIKHAN
6
     Court Transcriber:         ADL Transcription Services, Inc.
7                               24 Crossway Drive
                                Deer Park, New York 11729
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Proceedings recorded by electronic sound recording,

25    transcript produced by transcription service.

1          COURT OFFICER:  On Calendars 23, 24, 25 and 26 and

2   27, Ashmeen Modikhan, Case 19-46591.  We're going to do

3   appearances, but I'm going to start with the party on the

4   phone.  Your appearance, please?

5          MR. CHANCAS:  Yes.  Good afternoon, Your Honor.

6   Jeffrey Chancas, Borah Goldstein Altschuler Nahins and Goidel

7   PC for creditor, Board of Managers of the Patchogue Homes

8   Corp. Condominium Number 2.

9          THE CLERK:  Parties in the courtroom, your

10  appearances, please?

11         MS. HEIDBRINK:  Good afternoon, Your Honor.

12  Katherine Heidbrink for Rushmore Loan Management Services,

13  Claim Number 6, the Ozone Park property, and the full name of

14  my client is Rushmore Loan Management Services, LLC a

15  servicer for U.S. Bank Trust National Association as Trustee

16  of Dwelling Series IV Trust.

17         MS. BONSIGNORE:  Good afternoon, Your Honor.

18  Michelle Bonsignore from Woods Oviatt Gilman.  I am here on

19  behalf of -- I'm here with respect to the Howard Beach

20  property and we were retained for the motion for relief.  We

21  represent Rushmore Loan Management Services, LLC as servicing

22  agent for U.S. Bank National Association as legal title

23  Trustee for [inaudible] 2016 SC6 Title Trust.

24         MS. MODIKHAN:  Good afternoon, Your Honor.  Ashmeen

25  Modikhan, the Debtor.

1          MR. HOSEIN:  Good afternoon, Your Honor.  This is

2    Steven Hosein [inaudible]

3          THE COURT:  All right.  Good afternoon, everybody.

4    Thank you for coming in.  The purpose of this hearing is

5    limited to allowing the Debtor to inspect the notes and also

6    just to do some housekeeping after that process is done, so

7    that we can establish an appropriate briefing schedule for

8    whatever remains to be briefed, okay?

9          Although, I'm not certain, pardon me that there is

10   anything left to be briefed, but we'll touch upon that in a

11   minute.

12         I do want to be mindful of everybody's health and

13   safety, so I want to talk about how we should go about

14   looking at the notes.

15         So my suggestion is that we start with the note that

16   Truman is holding.  That's Ms. Bonsignore's client.  And then

17   in just a moment, we'll just ask Ms. Bonsignore to place the

18   original copy of the note on the podium, and then after

19   you've stepped back to your counsel table, Ms. Modikhan can

20   then inspect the note and then retreat back to the counsel

21   table.

22         Once Ms. Modikhan has looked at the note, then I'll

23   ask Ms. Leonard to retrieve the note so that I could look at

24   it as well.

25         And then after that, we'll bring it back to Ms.

1  Bonsignore and then we can have a discussion.  I would like

2  everybody to speak from the counsel tables. If you're going

3  to speak, there's really no reason to go to the podium.  I'll

4  be able to hear you just fine, and that way if we use that

5  procedure, nobody will have to get too close to anybody and

6  we can be as safe as possible.

7           Ms. Modikhan, is that an okay way to proceed?

8           MS. MODIKHAN:  I agree with that, Your Honor.

9           THE COURT:  Okay, Ms. Bonsignore, is that

10 acceptable?

11          MS. BONSIGNORE:  Yes.

12          THE COURT:  All right.

13          MS. MODIKHAN:  Your Honor, can I just say something?

14          THE COURT:  Just one second, please.  Ms. Heidbrink,

15 I intend to use a similar protocol for examination of your

16 client's note.  Is that an acceptable way to go forward?

17          MS. HEIDBRINK:  Yes, Your Honor.

18          THE COURT:  Okay, thank you.  Yes, Ms. Modikhan?

19          MS. MODIKHAN:  Your Honor, I'm just going to request

20 if we can get a copy of it?  Maybe after the reviewing?  Is

21 that possible?

22          THE COURT:  What we can do is after Ms. Bonsignore

23 and Ms. Heidbrink go back, they can make copies and send you

24 copies.  I have to tell you, though, that there are numerous

25 copies already attached to the pleadings that have already

1    been filed, so I'm not sure what having a copy of this note

2    will do, but I also don't think that either Ms. Bonsignore or

3    Ms. Heidbrink would have a problem with sending you an email

4    with another copy attached.  It's going to be the same thing

5    that should be attached.

6              On the other hand, I understand why you want it,

7    because if it looks different than what's attached to the

8    motions --

9              MS. MODIKHAN:  Yes.

10             THE COURT:  -- you want to bring that to my

11   attention.

12             MS. MODIKHAN:  Yes.  That's the reason.

13             THE COURT:  Right.  I understand.

14             MS. MODIKHAN:  But since it's in the courtroom and

15   if we have access, then we can just get a copy right here, so

16   I can -- you know?

17             THE COURT:  No.  I won't make a copy right here.

18             MS. MODIKHAN:  I'm sorry?

19             THE COURT:  I won't make a copy right here.  I

20   won't.

21             MS. MODIKHAN:  Okay.

22             THE COURT:  Okay.

23             MS. MODIKHAN:  Thank you.

24             THE COURT:  All right, so why don't we get started.

25   Ms. Bonsignore, why don't you -- take your time.

1          MS. MODIKHAN:  So this is actually in Countrywide.

2    This note is with Countrywide.  Thank you, Your Honor.

3          THE COURT:  All right, thank you.

4          MS. MODIKHAN:  May I step back to the podium?

5          THE COURT:  Yes, ma'am.  Go ahead.

6          MS. MODIKHAN:  I'm looking at the document, Your

7    Honor -- something on the top?

8          THE COURT:  Yes?

9          MS. MODIKHAN:  Rushmore?  I never got a copy of

10   whatever is in front of that note, and that note is with

11   Countrywide not Rushmore, not U.S. Bank, not [inaudible], not

12   Tiki or Tiki's [inaudible], but I never got a copy of that,

13   whatever is in front of that note, so when you look at it,

14   please --

15         THE COURT:  Of course.  I am aware that the note is

16   with Countrywide.

17         MS. MODIKHAN:  Yes.

18         THE COURT:  That was the original lender.  That

19   makes perfect sense to me.

20         MS. MODIKHAN:  Yes, it's only with Countrywide, and

21   that's who my lender was and then Bank of America and that's

22   it.  Nobody else I had any agreements with nobody else I had

23   any -- nothing.

24         THE COURT:  Right.  No, I understand.  I understand

25   completely and remember the purpose of the hearing is just

1  for inspection of the note.  It's not argument.

2          MS. MODIKHAN:  Yes.

3          THE COURT:  I have all of the arguments in the

4  motion.  I understand everything, so that's just fine.  It's

5  just to see the note, the original note, okay?

6          Ms. Bonsignore, do you want to be heard on

7  something?

8          MS. BONSIGNORE:  Your Honor, in the interest of

9  efficiency, I do have a certified copy if you'd like me to

10  provide it, I'd be happy to do so.

11          THE COURT:  Thank you so much.  Yes.  So why don't

12  you put that certified copy on the podium and then Ms.

13  Modikhan can retrieve it, and then after Ms. Modikhan steps

14  back with her certified copy, Ms. Leonard will be so kind

15  enough as to retrieve the original note from the podium for

16  me.

17          MS. BONSIGNORE:  I'm sorry, I'm putting -- just the

18  certified I'm leaving here?  And the original I'm taking

19  back?

20          THE COURT:  Why don't you leave the original copy

21  there, because I want to look at it as well, and Ms.

22  Modikhan, you take the certified copy once Ms. Bonsignore is

23  back to her table and then leave the original note for me to

24  look at.

25          MS. MODIKHAN:  Your Honor, what I'm also requesting

1    is like a letter in front of the note that Rushmore's dated

2    August 25, 2021.  I don't have a copy.  I've never received

3    that either.  So when you see it -- we'll talk about it, it's

4    just kind of difficult for me to explain it when you don't

5    have it in front of you.

6         THE COURT:  Sure, of course.

7         MS. MODIKHAN:  Okay, thank you.

8         MR. CHANCAS:  Your Honor?

9         THE COURT:  Yes?

10         MR. CHANCAS:  Yes, Jeffrey Chancas.  I just thought

11   maybe I could give a two-sentence explanation of why I phoned

12   in, because I don't know that I have to be on for the whole

13   hearing, and I can kind of explain why it was sort of a

14   last-minute decision?  I don't know -- if there's just a

15   pause of people are reviewing documents, [inaudible] complex

16   reason for being on.

17         THE COURT:  All right, hold on one second, Mr.

18   Chancas.

19         MR. CHANCAS:  Yes.  Thank you, Your Honor.

20         THE COURT:  Go ahead, Mr. Chancas.

21         MR. CHANCAS:  Well, the -- my client -- this is the

22   property that my client is the Board of the Howard Beach

23   property.  I was supposed to put in opposition to the

24   objection to my client's claim by tomorrow.  Based on the

25   papers that I've seen submitted by the lender and also by the

1    Trustee in opposition to Ms. Modikhan's request to sell, my

2    thinking, and I'm just saying this without prejudice, but my

3    thinking at this point is, if for whatever reason the Court

4    were to exceed to the Trustee's request to abandon the

5    property and have it -- there was no stay and whatever rights

6    under state law, it's conceivable that I would withdraw the

7    claim, because the claim was really, as with the lender, the

8    claim was made in the context when it was a Chapter 13.

9            THE COURT:  Mr. Chancas --

10           MR. CHANCAS:  I was hoping to get --

11           THE COURT:  -- I'm sorry to interrupt you, but

12   apparently you weren't on yesterday's hearing, because

13   [inaudible] the answer to your question.

14           So, there was a hearing on that motion, and I denied

15   the motion.  The debtor has an opportunity to make a motion

16   to request the Trustee to abandon the property.  It wasn't

17   something I was going to do sua sponte.  So as we stand now,

18   the motion to sell is denied, but there's been no application

19   to the Court to abandon the property.

20           MR. CHANCAS:  All right.  Well, I guess then

21   perhaps -- I guess my wish was to get an extension of time to

22   put in opposition to see where that issue goes, because --

23           THE COURT:  No, sir.  No, sir.  No, sir.  We need to

24   get this done.  You need to either file an objection or not.

25           MR. CHANCAS: Okay.

1          THE COURT:  And the reason I'm saying that is

2    because we gave -- I knew that we needed to accommodate some

3    scheduling issues on behalf of everybody and so the schedule

4    is put in place based on everybody's concerns and -- but

5    before I say that, let me walk back a bit.  Let me just not

6    give you the reflects of no.

7          How much time do you need?  Because again, we

8    extended the time because there were concerns.  So what time

9    are you looking for by way of extension?

10          MR. CHANCAS:  Well, I guess I was going to say a few

11    weeks.  The reason I'm saying that is because if the

12    property, I'm just giving a hypothetical scenario, if for

13    whatever there's a motion and the property is abandoned and

14    we're dealing -- the whole concept of filing the claim was

15    really an in-rem claim.  It wasn't so much for -- I don't

16    think there would be money from the estate.  It's

17    conceivable, I'd withdraw the claim and there wouldn't be a

18    need for opposition and a reply and so forth.

19          And I thought perhaps, if we see where things go,

20    that's a possibility because the claim is really based on it

21    being a Chapter 13 where there might be some payout.  In this

22    situation, if it's -- you know, if it's going to be

23    determined under state law or the lender is going to proceed

24    with the foreclosure or whatever, and we're in second

25    position anyway, and I don't know there's sufficient funds

1    even to be paid from a sale.

2            You know, I don't know that it's worth the time and

3    effort with respect to a claim that I probably don't expect

4    to be paid from the estate.  It's more based on what the lien

5    is and that would be a state law issue.

6            You know, it's possible not to go through all the

7    litigation on that issue, so I was hoping for a few weeks to

8    see if there's no motion made, then fine.  I'll do -- and

9    have the opposition, but it may become somewhat unnecessary

10   depending what happens with that issue.

11           THE COURT:  That's absolutely true.  The one thing I

12   know about this case is that it's unpredictable.  Anything is

13   hypothetically possible.  There's any number of applications

14   that could or could not be paid.  I do feel compelled to wrap

15   up this case and to get all of these issues resolved in a

16   prompt fashion.

17           I'm not inclined to take a wait and see attitude.

18   It's really a business decision for you and your client,

19   whether you want to spend the time objecting, if perhaps it

20   could be a conditional order where you agree that the claim

21   is disallowed, provided however, there's no finding one way

22   or the other with respect to your client's claims and liens.

23           So maybe that's the way to go, but that's something

24   that you would have to discuss with Ms. Modikhan first, and I

25   apologize, but I can't -- so many things in this file that

1  are unexpected, and I know that you don't want to spend time

2  and money, or your client doesn't want to spend time and

3  money on this, but unfortunately, I cannot accommodate that.

4  You really have to make a decision whether you're going to

5  respond or not.

6        MR. CHANCAS:  All right.  All right, I'll do so,

7  Your Honor.  All right, very good.  Thank you.  I'm going to

8  leave the call. There's no point at this point. I just wanted

9  to address that issue.

10        THE COURT:  All right, thank you very much for

11  calling in.  I appreciate that.

12        MR. CHANCAS:  All right, thank you, Your Honor.

13        THE COURT:  Thank you.  All right.  I would like the

14  opportunity to take a quick look at the note.

15        Ms. Leonard, can I impose upon you to pick it up for

16  me?  I just need the original.

17        Ms. Modikhan, did you compare the original to the

18  certified copy?

19        MS. MODIKHAN:  Yes, I did.  But again, Your Honor,

20  I'm going to look at what I have at home also and I'm going

21  to compare and make sure that, as I said, the lender is

22  Countrywide.

23        THE COURT:  I hear what you're saying.

24        MS. MODIKHAN:  Yes.

25        THE COURT:  All right, so what I'm looking at, just

1    for the record, is a 7-page document.

2              The first two pages of the document is a letter

3    dated August 25, 2021, to the attention of the Bankruptcy

4    Department for Woods Oviatt Gelman LLP regarding Mortgagor

5    Ashmeen Modikhan for the property address of 8710 149th

6    Avenue, Howard Beach.  The letter is signed by David Segulvia

7    (ph.) Rushmore Loan Management Services LLC.

8              It's acknowledged and agreed by Brandy Sec (ph.) who

9    is -- is that WoodsDefaultServices.com  and it's an agreement

10    for the recipient of the letter to act as an agent with

11    respect to holding these documents.

12              And there's a Rider to that letter, Rider A

13    describing that the documents are the original note from

14    Countrywide Home Loans and a note endorsement from

15    Countrywide Home Loans endorsing blank.

16              So that Rider A is two pages and it's signed by

17    David Seguliva from Rushmore and it's acknowledged by the

18    same Brandi Sec.  After the two-page letter and the two-page

19    rider we have an original note.

20              It has an original stamp on top and it has an

21    original stick-on label with the bar code.  Notice dated

22    April 24, 2007, it references property 8710 149th Avenue,

23    Howard Beach, New York 11414-1439.

24              It has two holes punched at the top of the first

25    page, and the second page of the note.  The  note is in the

1   amount of $179,000.  It's in favor of Countrywide Home Loans

2   and the first page of the note is initialed.

3           There are bar codes at the bottom of the first page

4   that are inked and  not original labels, and the note is

5   initialed on Page 1 and there's an original ink signature on

6   Page 2.  The back of Page 2 has an endorsement, pay to the

7   order of blank without recourse, signed by Michelle

8   Sjolander, S-J-O-L-A-N-D-E-R.

9            There's also an elonged blank page, pay to the

10  order of blank, without recourse by Michelle Sjolander who is

11  described as the executive vice president of Countrywide.

12          So that's what the document looks like.  Okay, I'm

13  going to pass this document back to Ms. Leonard.  Thank you.

14  And you can put it back on the podium.

15          MS. MODIKHAN:  Can I take one more moment with that,

16  please?

17          THE COURT:  One second.  All right, thank you for

18  your patience, Ms. Modikhan.  Go ahead.

19          MS. MODIKHAN:  Can I have one moment?  You read

20  something that maybe I missed.

21          THE COURT:  You want to look at the document one

22  more time?

23          MS. MODIKHAN:  Please.

24          THE COURT:  Of course.  Sure.

25          MS. MODIKHAN:  Thank you, Your Honor.

1        THE COURT:  Yes.

2        MS. MODIKHAN:  Thank you.  I appreciate it.

3        MS. BONSIGNORE:  Sure.

4        MS. MODIKHAN:  Your Honor, I just want to -- on the

5    hearing on July 29th, and I'm just reading from the

6    transcript, we also said we think that we would spend some

7    time going through all the assignments of the note and the

8    mortgage, but I think it will be just simpler for the

9    servicer and the mortgagee to just get a collateral file

10   including this.

11       So I did reach out in my emails and requested that

12   and was told that we just wanted the wet ink.  On the

13   collateral file is all my payments and whatever I've made,

14   that would suffice also in this matter,  and that's where I

15   go back to the accounting of all of this, and again I'm

16   stating they're not the lender.  They're not -- they claim

17   they're investors, servicers, the agents, you know, they're

18   actually debt collectors.  I just wanted to state that to

19   you.  I appreciate your time.

20       THE COURT:  Thank you, Ms. Modikhan.  So with

21   respect to the collateral file, the collateral file, the

22   important part of the collateral file for me was the original

23   promissory note.

24       With respect to the payments, you know, if there is

25   a dispute as to the dollar amount of the claim the actual

1  amount of claim that is owed, then there's a list of payments

2  made that are attached to the proof of claim.  And those are

3  the payments they have.

4         If you think that there are payments that are not

5  reflected in that, well then you go to your bank statements

6  and you identify the payment that is not reflected in their

7  proof of claim and that's a separate issue then whether they

8  have the original promissory note.

9         You said on many occasion that they are not the

10  lender, and every time you've said it, I've heard it, and the

11  reason that I don't respond is because I want to be mindful

12  of how important this is to you and get all of the

13  information, but I will tell you that as a matter of law, the

14  original lender is allowed to assign their interest in a

15  loan.  They are simply allowed to do it.

16         There is no requirement that they keep it and that

17  you make the payments directly to them.  They are allowed to

18  sell, literally sell these promissory notes to other people,

19  and that's precisely what they did based on the documents

20  that were filed.

21         And the purchaser of the note has the right to

22  collect on the note and enforce the mortgage the same as

23  Countrywide.  So that's the state of the law.

24         MS. MODIKHAN:  I do understand that, Your Honor.

25  However, they haven't filed a proper proof of claim 410 and

1    even on the [inaudible], Number 2 on that, they claim they

2    didn't receive [inaudible], so it's incorrect.  It

3    [inaudible] follow that 410.  It says --

4            THE COURT:  I know. You've said this the last time

5    you were here and I don't mean to interrupt but I did drift

6    into addressing your legal arguments which I did not mean to

7    do, because we simply --

8            MS. MODIKHAN:  Okay.

9            THE COURT:  It's just not --

10           MS. MODIKHAN:  All right.

11           THE COURT:  I want to be mindful of everybody's

12   time.

13           MS. MODIKHAN:  Yes.  I do feel like I'm repeating

14   myself over and over and I do apologize for that.

15           THE COURT:  It's important to you.

16           MS. MODIKHAN:  Yes, it is.

17           THE COURT:  I understand that.  Everything you say,

18   I hear.

19           MS. MODIKHAN:  There are a lot of people who have

20   been going through this.  I am -- anyway, now I know, so we

21   have the other one to deal with.

22           THE COURT:  Thank you.  Ms. Heidbrink, I am going to

23   ask you to put the note on the podium.  You didn't by chance

24   bring an extra copy.  I didn't ask you to, so I'm not --

25           MS. HEIDBRINK:  No, Your Honor.  Unfortunately I did

1  not have a spare copy.  I have personally verified that it's

2  the same as what was filed with our claim to Number 6.  Same

3  for the redactions, of course.

4          THE COURT:  All right. Right, right.

5          MS. HEIDBRINK:  And I'd be happy to make a photocopy

6  next time I'm back in my office, which will be some time next

7  week and can mail it to Ms. Modikhan.

8          THE COURT:  Okay, would you be comfortable and --

9  see, these notes, basically are incredibly important.

10  Without the note, the lender can't do anything and they are

11  very proprietary about who gets to hold the note and the

12  lawyer has to make sure basically that the note doesn't go

13  out of their sight.

14          So it's -- for her to go back to her client if

15  anything happens to that note, she will be fired.  So I need

16  to be mindful of that.

17          All that, would you be comfortable with my courtroom

18  deputy taking the note into my chambers and making a copy and

19  you can say no.

20          MS. HEIDBRINK:  Oh, Your Honor, I would absolutely

21  be comfortable with that.  Hopefully that could help resolve

22  things more quickly at this hearing.

23          THE COURT:  All right, so that's what we will do.

24  We will take the note.  I may go back into chambers with my

25  courtroom deputy to do that, because I want to make sure that

1    the staple is taken out properly.  Even though Ms. Leonard

2    knows how to do that, I just -- I want to be careful and

3    respect everybody's interest in everything.

4           So that way, you'll get the copy of your note,

5    you'll be able to see it side by side, just like you did with

6    the certified copy and Ms. Heidbrink can be assured that all

7    steps are being taken to protect the rights of her and her

8    client.  Okay?

9           So with that said, Ms. Heidbrink, may I ask you to

10   put the note on the podium, please?

11          MS. HEIDBRINK:  Certainly.

12          THE COURT:  All right, Ms. Modikhan, do you want to

13   inspect?

14          MS. MODIKHAN:  Thank you, Your Honor.  Again

15   [inaudible] just wanted to [inaudible] with that.  Thank you.

16          THE COURT:  I'm sorry, Ms. Modikhan, I didn't hear.

17   I'm so sorry.

18          MS. MODIKHAN:  I said I just -- you know, a

19   signature, when you do a signature on the back you feel a

20   little print and I notice that I didn't feel that in those

21   [inaudible] actually.  So you know, I'm just saying --

22          THE COURT:  Okay.

23          MS. MODIKHAN:  -- normally when you sign something

24   and you put your hand on the back of it, you would feel a

25   little print, and I didn't feel that on these, so just for my

1   [inaudible].  Thank you.

2           THE COURT:  Thank you.  Ms. Leonard, when you have a

3   moment, may I ask you to get the note for me? I just want to

4   take a look at it, too.  Thank you.

5           After I look at it, we'll go back, if that's okay

6   with you, and we'll make a copy of it? Okay, thanks.

7           All right, so I've been passed a two-page document.

8   It has a two-hole punch at the top.  It's a promissory note

9   dated November 21, 2005.  It relates to 9422 Magnolia Court,

10  Unit Number 1B, Ozone Park, New York, 11417-2958.

11          It's in the original principle amount of $400,000.

12  It's made in favor of Americas Wholesale Lender.  The first

13  page is stamped original in black ink.  The bottom of the

14  first page is initialed on the bottom, right-hand side.

15  There's two bar codes on the bottom.  They're imprinted.

16  They're not stickers.

17          The second page has a signature.  It looks like it's

18  ink.  It doesn't look like it's stamped.  The second page is

19  also stamped original.

20          On the back of the second page, it says pay to the

21  order of blank, without recourse.  It's endorsed in blank and

22  it's signed by David Spector, Managing Member.

23          There's also two X's on back of the last page in

24  ink. They're not stamped.  They're handwritten.  All right,

25  so I'm about to leave the courtroom.  I just ask you to all

1  remain in the courtroom just for one moment while we go make

2  a copy and we'll be right back.  Okay?

3          THE CLERK:  All rise.

4          All rise, for Judge Jil Mazer-Moreno.

5          THE COURT:  Okay, please be seated.  All right, so

6  Ms. Leonard just put two documents on the podium. One is the

7  original note and one is the copy of the note.

8          The copy of the note is actually three pages,

9  because the second page of the note has [inaudible] so

10  instead of doing a double-sided copy, we just put the back of

11  the second page on a third sheet of paper.

12          So Ms. Modikhan, just go to the podium, compare the

13  original note to the copy that I made and then after you've

14  done your review, take the copy and  if you would be so kind,

15  leave the original note on the podium for Ms. Heidbrink.

16          MS. MODIKHAN:  Sure.  Thank you.  Thank you, Your

17  Honor.

18          THE COURT:  Thank you, Ms. Modikhan.  Ms. Heidbrink,

19  may I ask you to retrieve your original note.

20          All right, so that's all we're going to do by way of

21  inspection today.  So I want to make sure that we're all

22  clear as to next steps, and that's with respect to the motion

23  for relief from stay, the objection to Claim Number 5 and the

24  objection to Claim Number 6.

25          Even though we're not here today on the objection to

1    Claim Number 5, I just want to make sure that we don't have

2    to come back and do more work and talk about more briefing,

3    because all of these issues are kind of related.  So with

4    respect to the claim objections, what happened was Ms.

5    Modikhan filed a motion objecting to Claim Number 5 and filed

6    a motion objecting to Claim Number 6.

7            The way it usually works is after a motion is filed,

8    objecting to claims and the creditor files a response and

9    then the debtor, or the person objecting to the claim has the

10   opportunity to file a reply and the reply is limited to

11   what's raised in the response.  Reply isn't an opportunity to

12   raise new objections.  That's generally not how it works.

13           So in a typical scenario, that's what would happen.

14   There'd be an objection, a response, and a reply.  Sometimes

15   in appropriate circumstances, the creditor has the right to

16   file what's called a sur reply, which is an answer to the

17   reply and sometimes that happens when the reply raises

18   matters that aren't raised in the original motion, right?

19           What's happened in this case is kind of different.

20   We have an objection.  We have replies by each creditors, and

21   then we have the letter from Ms. Bonsignore's colleague, Ms.

22   Fugate which talks about inspection of the note and we came

23   here and we looked at the note.

24           So really, it seems to me that we should be done

25   with briefing.  Ms. Modikhan, I know that you filed an

1   additional pleading this morning with a consent judgment

2   against Rushmore.  I can consider in connection with the

3   claim objections, anything that you filed on the docket,

4   that's fine, and many of them you've identified as related to

5   the claim objections.

6        Ms. Modikhan, as we sit here today, do you have any

7   other documents that you need to file with respect to the

8   claim objections?  Are there any other matters you want to

9   raise in a pleading with the Court?

10       MS. MODIKHAN:  Your Honor, I just wanted to go

11  through everything again, if you would give me -- I'm so

12  sorry.

13       THE COURT:  Thank you.

14       MS. MODIKHAN:  I just want to take a look at this

15  and then I can look over everything, because I just came here

16  for the inspection.  I didn't realize that we had a hearing.

17  I just came here just to put the inspection.  I didn't know I

18  had to do anything else.  I'm not prepared for that at the

19  moment.  So if we can -- I would really appreciate that.

20       THE COURT:  That's fine.  I kind of anticipated

21  that.  So what I'm thinking though, is I would like to set a

22  deadline to you to file whatever you're going to file in

23  addition to what's already been filed.  You may sit.  That's

24  fine.

25       And then even though a sur reply isn't often -- it's

1  not permitted by the local rules, but in this case, I think

2  it's important that you respond to this last pleading that

3  Ms. Modikhan has filed, and also I know that there's a

4  document that was filed today, motions to strike filed, so to

5  the extent that they were late to the claim objections, you

6  should have the opportunity to respond.

7          So what I'd like to do is to set a deadline, Ms.

8  Modikhan, for you to file whatever else you want to file and

9  then set another deadline for each of the two creditors to

10  respond.  So let me start with you.  What would you like your

11  deadline to be for you to file this last pleading in

12  support -- in further support of your objection to Claim

13  Number 5 and your objection to Claim Number 6?

14          MS. MODIKHAN:  I don't even have my calendar here.

15  That's my error, for not working with my calendar.  I have so

16  many things [inaudible].  Do we have a calendar I can look

17  at?

18          THE COURT:  Sure.  So --

19          MS. HEIDBRINK:  Your Honor, I don't mean to

20  interrupt, but I'm having a little trouble hearing Ms.

21  Modikhan, so if she could please speak up when she speaks?

22          THE COURT:  Thank you, Ms. Heidbrink.  Ms. Modikhan,

23  because of all of the boundaries and because of the masks,

24  while I do this, too, I just need to be mindful, and I think

25  you need to be mindful of speaking loudly, so I would just

1  ask you to do that.

2          MS. MODIKHAN:  Okay.

3          THE COURT:  Thank you.  Okay, so let's think about

4  dates.  Okay, so today is September 1st.  I believe, and I'm

5  looking at -- let me just look at my -- I think that the next

6  deadlines in this case are September 21st which are deadlines

7  for certain defendants and the adversary to file responses to

8  your motions to dismiss.  That's also the deadline for you to

9  respond to I believe, the motions to dismiss that were filed

10 by Ms. DeRosa, Ms. Shahdood and Mr. Aronow.

11         So, I'm wondering if maybe by the end of next week,

12 Friday, September 10th, if you could file whatever you're

13 going to file with respect to the two claim objections.

14         MS. MODIKHAN:  I will check the calendar.  Even if

15 on that date if I do need some more time, may I -- I may not

16 need it, but just in the event.

17         THE COURT:  Sure.  Sure.  If you do need more --

18         MS. MODIKHAN:  I'm sorry.

19         THE COURT:  That's fine.  I understand.  If you do

20 need more time, then please let me know as soon as possible.

21 Okay?

22         MS. MODIKHAN:  Sure.

23         THE COURT:  So right now we're going to have

24 September 10th as the deadline for Ms. Modikhan to file

25 whatever she's going to file with respect to the claim

1    objections.

2          Now, I'd like to look at Ms. Bonsignore and Ms.

3    Heidbrink.  You may want to file something.  You're not

4    obligated to file what  I would term in this case as sur

5    reply but if you do want to do that, when should it be due?

6    And Ms. Heidbrink, I know that you're leaving for leave.

7          MS. HEIDBRINK:  Yes, Your Honor.  I think that

8    September 24th which is two weeks after Ms. Modikhan's

9    deadline might be a good deadline.  I may not be personally

10   handling it for very obvious reasons, but I do believe there

11   has been quite a lot filed already.

12         THE COURT:  It --

13         MS. HEIDBRINK:  With respect to these claim

14   objections.

15         THE COURT:  Okay.

16         MS. BONSIGNORE:  That's fine with us, too, Your

17   Honor.

18         THE COURT:  Okay.  So any sur reply to be filed by

19   the -- Ms. Heidbrink's client and Ms. Bonsignore's client

20   will be filed by September 24th.

21         MS. MODIKHAN:  I appreciate that, Your Honor.

22         THE COURT:  No problem.  Okay, so now we have the

23   motion for relief from stay.  And for me it's the same kind

24   of posture, except it's kind of reverse.

25         So here, Ms. Bonsignore's client made a motion.  Ms.

 1  Modikhan you objected, and then there were some additional

 2  pleadings.  Ms. Bonsignore, please correct me I'm mistaken.

 3  There are so many documents on the docket, and I'm not a

 4  hundred percent sure I'm getting this right.

 5        But I think that your colleague Ms. Fugate filed a

 6  pleading that deals with Rooker Feldman, right?  I think at

 7  this point, it's up to Ms. Modikhan to file what I would call

 8  a sur reply.

 9        So Ms. Modikhan --

10        MS. MODIKHAN:  I'm sorry, what did you say?

11        THE COURT:  So I apologize.  I need to speak more

12  loudly.

13        MS. MODIKHAN:  Yes.

14        THE COURT:  So the motion for relief from stay is

15  flipped, so here, Ms. Bonsignore's client made a motion.  You

16  had the opportunity to object to that motion, which you did,

17  and one of the reasons we're here today to inspect the note

18  was because of that inspection.  So we have the motion.  We

19  have the response, and now it's time for the reply.

20        So now it's time for Ms. Bonsignore's client to file

21  the reply, but in essence she kind of did, because before we

22  got here today, Ms. Bonsignore's colleague, Ms. Fugate, she

23  filed -- if you just give me one moment, I'll get the docket

24  up and I'll let you know what I'm talking about.  It may

25  clarify things.

1          All right, so what Ms. Fugate filed was document

2    number 215 on the docket.  It's an affirmation in support of

3    the motion for relief from stay.

4          MS. MODIKHAN:  What was that, Your Honor?

5          THE COURT:  Oh, the docket number is 215.  And that

6    was filed by Ms. Fugate's client, so that's Truman.  That's

7    what we call Truman.

8          MS. MODIKHAN:  When was it filed?

9          THE COURT:  Oh, apologize.  That was filed on August

10   27th, 2021.

11         MS. MODIKHAN:  Okay.  I'm going to have to review

12   that again.  Again, I'm not here -- I wasn't prepared for

13   that today, too.  So I'm going to make sure that I look for

14   that and from what I'm understanding, I'm going to reply to

15   that.  That's what you said,  right?

16         THE COURT:  Well, not precisely, but I think I'm

17   actually okay with -- we'll do it a little backwards.

18         If you want to do one more pleading that includes

19   whatever else you're going to say about the motion for relief

20   from stay including whatever observations you have about the

21   note.  I'm going to give you the opportunity to do that by

22   September 10th, okay?

23         And of course with respect to the objections to

24   Claim Number 5 and 6, of course you can include whatever

25   observations you want to include with respect to the notes,

1    all right? So that's September 10th.

2            And Ms. Bonsignore, I will give you the opportunity

3    to get the last word, since you're the movant.  And so I

4    would set September 24th, if that's  acceptable, as your

5    deadline to respond.

6            Now, honestly at that point I'm not going to permit

7    anymore documents.  I will not look at anything further on

8    the document with respect to the proof of claim.  The

9    objections to proof of claim to all the motions  for relief

10   from stay.

11           We've already gone well beyond the pleading, the

12   pleadings that are acceptable for motion practice, but I do

13   want to make sure that everybody has the opportunity to say

14   whatever they have to say.

15           By this time, I think everything has been pretty

16   much well said.  So that's what I'm going to do.

17           And then we are coming back here on the adversary

18   proceeding and on a status conference in the main case.  I

19   want to say November 2nd, thank you, Ms. Leonard.  I may --

20   I'm not sure what I'm going to do after September 24th.  I

21   might issue a decision that I will send to all the parties.

22   I may call you back if I have questions and I want further

23   argument, or I may set it down for a status conference.

24           For now, I'm going to adjourn it to November 2nd, so

25   that it's on the same calendar date as the adversary

1    proceeding, but if I ask you to return, I may ask you to

2    return sooner than that, okay?

3              MS. MODIKHAN:  Okay.

4              THE COURT:  I think that's all I want to do today.

5    Does anybody have any questions or any thoughts?  That aren't

6    like legal -- yes, Ms. Heidbrink?

7              MS. HEIDBRINK:  Yes, Your Honor.  I have one

8    practical matter.  The debtor is not currently represented by

9    counsel, but Ms. Hossain who is here today has been email

10   serving us with papers.

11             Is his email address a valid way to serve the debtor

12   or to correspond with the debtor?

13             THE COURT:  All right, so Ms. Modikhan --

14             MS. MODIKHAN:  Mr. Hossain is my son.  He helps me

15   do all the emails and stuff.

16             THE COURT:  No, it's fine.  Ms. Heidbrink's concern

17   is that if she sends you a document, should she be sending

18   you a document to your son's email address?

19             MS. MODIKHAN:  That's fine.  That's fine.  It's

20   already there.

21             THE COURT:  Okay.

22             MS. MODIKHAN:  He helped me with the Zooming, so

23   that's fine.

24             THE COURT:  Okay, so when Ms. Heidbrink or Ms.

25   Bonsignore --

1           MS. MODIKHAN:  Since we -- you have my email, that's

2    fine also.  What is it you're looking to send me?

3           MS. HEIDBRINK:  I don't actually have Ms. Modikhan's

4    email.

5           MS. MODIKHAN:  Ms. Fugate has my -- I'm sorry.  Ms.

6    Fugate has my email address.  I can give it to you if you

7    would like.

8           THE COURT:  Okay, so I just want to nail down,

9    because I think the concern that I would have, if I was Ms.

10   Heidbrink, is emailing a document to my adversary and then my

11   adversary coming back and saying, "Your Honor, service of the

12   document, service of the reply, service of whatever pleading

13   was not proper because it wasn't -- it wasn't mailed to me by

14   snail mail," or, "Your Honor, service wasn't proper to me.

15   You should disregard it, because it was emailed to my son and

16   not to me."

17          So, Ms. Heidbrink and I'm sure, Ms. Bonsignore, want

18   to nail down what is acceptable service of process, so that

19   when we come back here there cannot be any argument that the

20   documents were not properly served.

21          MS. MODIKHAN:  Well --

22          THE COURT:  And I can be flexible and I'm just

23   asking you what you need.

24          MS. MODIKHAN:  I'd like mail actually, because the

25   computer, you know -- I would rather first-class mail like

1  I've been doing or even priority mail if it's important,

2  because I've been trying to do that myself sending everything

3  first class or priority mail, so at least we have a tracking

4  for it.

5          THE COURT:  So first class mail just so we're all on

6  the same page --

7          MS. MODIKHAN:  No, not for everything, but priority

8  mail.

9          THE COURT:  I'm not going to direct service by

10  priority mail, because that's expensive, and all that's

11  required under the rules is first class mail.

12          May I suggest, and this is what I'm going to suggest

13  and one of the reasons that people don't like first class

14  mail these days is many people are not working in the office,

15  so they don't have copy machines, so they scan stuff in, but

16  that may not be the case, and you are entitled to service by

17  first class mail.

18          Ms. Heidbrink, would that be an undo imposition to

19  serve via first class mail?

20          MS. HEIDBRINK:  No, Your Honor.  That is not an undo

21  imposition.  That's what we've been doing.

22          THE COURT:  Okay.

23          MS. HEIDBRINK:  I was a little confused, because we

24  were receiving email service and Ms. Modikhan has been

25  mailing as well.  So I was wondering if there was a more

1   convenient method for her.  If first class mail continues to

2   be the most convenient method of service for her, I'm

3   certainly fine with that.

4            THE COURT:  All right, so they will continue to send

5   you documents by first class mail.  You will send them

6   documents by first class mail and it wouldn't hurt, if you

7   also just shot an email with an attachment, to the email

8   addresses.  Ms. Modikhan, if you could do that to Ms.

9   Heidbrink and Ms. Bonsignore.  Ms. Heidbrink and Ms.

10  Bonsignore, if you could also send the documents via email to

11  Ms. Modikhan's son and if Ms. Modikhan furnishes an email

12  address to you, to that address as well.  It's not required.

13  It's just because things are so crazy these days and it's

14  just kind of a nice belt and suspenders, so -- Ms.

15  Bonsignore?

16           MS. BONSIGNORE:  Could we get Ms. Modikhan --

17           MS. MODIKHAN:  Ms. Modikhan.

18           MS. BONSIGNORE:  Ms. Modikhan and Mr. Modikhan's

19  email addresses on the record, just so that we're all clear.

20  Is that okay?

21           THE COURT:  Is that acceptable?  Okay.  So Ms.

22  Modikhan, would you mind stating on the record an email

23  address, please?

24           MS. MODIKHAN:  It's AAKL123@aol.com.

25           MS. BONSIGNORE:  It's A as in apple, A as in apple,

 1 | P as in Pear --

 2 |         MR. HOSEIN:  No, K.

 3 |         MS. MODIKHAN:  A as in apple, A as in apple, K as in

 4 | Kingston, L as in London, 123@aol.com.

 5 |         MS. BONSIGNORE:  Thank you.  Thank you.

 6 |         THE COURT:  Thank you, Ms. Modikhan.

 7 |         MS. HEIDBRINK:  And that's AAK123@aol.com?

 8 |         MS. MODIKHAN:  No, it's AAKL123@aol.com.

 9 |         MS. HEIDBRINK:  Thank you, Ms. Modikhan.  I was

10 | missing the L.

11 |         MS. MODIKHAN:  Okay.

12 |         THE COURT:  Mr. Hosein?

13 |         MR. HOSEIN:  My email address is Steven, S-T-E-V-E-N

14 | A like Apple, Hosein, H-O-S-E-I-N at aol.com.

15 |         MS. HEIDBRINK:  Thank you, Mr. Hosein.

16 |         MS. BONSIGNORE:  Thank you.

17 |         THE COURT:  All right, thank you, Mr. Hosein.  All

18 | right, thank you very much.  You can be seated, Ms. Modikhan.

19 | Thank you.  I think that this was productive.  Thank you all.

20 |         Is there anything else I should address before I

21 | dismiss everybody today?

22 |         MS. HEIDBRINK:  Your Honor, I'm sorry, one more

23 | thing.

24 |         THE COURT:  Sure.

25 |         MS. HEIDBRINK:  We had at the July 29th hearing,

1    Your Honor ruled on the motion to strike the assignments of

2    mortgage attached to our transfer of claim, and which is the

3    pleading is Docket Number 128 and then the transfer of claim

4    and the exhibits are Docket 113 through 115, and then at

5    yesterday's hearing that matter was on the calendar and then

6    was moved to today's hearing for a brief adjournment.

7         I do note that that objection was untimely.  We put

8    on the notice that rejection at Docket 130, but I also

9    understand the Court's concern that was raised yesterday

10   which is that the assignments of mortgage substantively tie

11   into the issues the debtor has been repeatedly raising with

12   regard to the claim objection.

13        So I am prepared to handle that however the Court

14   sees fit, but I did want to make sure that administratively

15   we were carrying that to November 2nd or that that was

16   wrapped up in what was going on or any other way Your Honor

17   prefers.

18        THE COURT:  All right thank you, Ms. Heidbrink.

19   That's actually an important consideration.

20        I think what I'd like to do is to carry that to

21   November 2nd.  I don't want any more briefing on that.  I

22   think it's fully submitted, and I will rule on that in

23   connection with the other motions.

24        So, it will be carried to November 2nd, but I may

25   rule on it after all briefing is completed on the two claim

1 objections and the objection for relief from stay.

2        MS. HEIDBRINK:  Thank you, Your Honor.  That's very

3 helpful.

4        THE COURT:  Thank you.  And just one disclaimer.  My

5 one disclaimer is that I may not rule on any of this until

6 briefing is completed in the adversary proceeding.  I'm not

7 saying that's what I'm going to do.  I don't think they're

8 necessarily tied to each other, but I just want to let you

9 know that there is no assurance that I'm going to rule before

10 briefing is completed, okay?  I just wanted to put that out

11 there, so everybody has the right expectations.

12        So on one hand I think that the pleadings are kind

13 of related.  On the other hand, I think that there is enough

14 here that perhaps I can after I review everything that's

15 briefed here.  All right.

16        So again I invite anybody who has any questions, any

17 administrative matters to raise them now.  That's what we're

18 here for.

19        MS. HEIDBRINK:  I just had a preference for my

20 client which is that the issues relating to our standing

21 would primarily be handled within the underlying bankruptcy?

22 I know they've been ancillary matters even the adversary.

23        I will certainly put that in my amendment to the

24 motion to dismiss, but I think it's more helpful to deal with

25 standing issues within the bankruptcy case, unless

1 | it's directly related to the gravamen of the adversary

2 | proceeding.

3 |         THE COURT:  Duly noted.  Thank you, Ms. Heidbrink.

4 |         MS. MODIKHAN:  Your Honor, I'm just --

5 |         THE COURT:  No, she has the same problem.

6 |         MS. MODIKHAN:  You're repeating it, so I appreciate

7 | that.

8 |         THE COURT:  No problem.  So Ms. Heidbrink said -- I

9 | just said that there's a disclaimer.  I'm not sure when I'm

10 | going to rule on a motion for relief from stay or when I'm

11 | going to rule on the claim objection.  It may be that I wait

12 | until after the adversary is completely briefed.  I'm not

13 | sure that's what I'm going to do.  I may not do that.

14 |         And Ms. Heidbrink said that it's her client's

15 | preference that with respect to the matters relating to

16 | standing, so whether Dwelling, her client, or Tiki has

17 | standing to assert the claim, she's asking me to resolve that

18 | in the context of the bankruptcy case, given the claim

19 | objections -- in the context that the claim objections or the

20 | motion to strike as opposed to resolving that issue in a

21 | decision in the adversary proceeding.  That's her preference.

22 | It doesn't mean I'm going to do that or not do that.  She's

23 | expressing her preference and because I get to wear this, I

24 | get to do whatever I want.

25 |         MS. MODIKHAN:  Thank you, Your Honor.  That's fine.

1          THE COURT:  Okay, thank you.  Okay, and again, I

2   have no problem answering questions and resolving any

3   procedural or administrative issues you want to decide, so if

4   there's anything else that should be raised, now is the time.

5          All right.  So I think that we're done here today.

6   Give me one second.

7          THE CLERK:  All rise.

8          THE COURT:  Thank you, all.  Have a good day.

9          ALL:  Thank you, you too.

10                       * * * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                            * * * * *

2

3              I certify that the foregoing is a true and

4    accurate transcript from an electronic sound recording of the

5    proceedings in the above-entitled matter.

6

7

8    Lisa Previti:

9

10

11                    Date:  September 2, 2021

12

13

14

15

16

17

18

19

20

21

22

23

24

25

< Dates >
8/13/2021. 1:23
8/23/2021. 1:13
April 24, 2007 14:22
AUGUST 18,2021 1:15
AUGUST 19, 2021 1:19
August 25, 2021 9:2, 14:3
August 27th, 2021. 29:9
July 29th 16:5, 35:25
November 21, 2005 21:9
November 2nd 30:19, 30:24,
    36:15, 36:21, 36:24
November 5, 2019 1:8
September 1st 26:4
September 2, 2021 40:11
September 21st 26:6
September 24th 27:8, 30:4,
    30:20
September 24th. 27:20
#1 1:29
#2 1:30
#3 1:30
#4 1:31
#5 1:31
#6 1:31
#6-1 1:28
$179,000. 15:1
$400,000. 21:11
-------------------------------X 1:3,
    1:9


< 1 >
1 1:30, 15:5
1-19-46591-jmm 1:4
10004 1:47
10013 1:42
10:30 1:20
10th 26:12, 26:24, 29:22, 30:1
113 36:4
11414-1439. 14:23
11414. 1:26
11417-2958. 21:10
115 36:4
11729 2:14
12 1:31
123@aol 35:4
128 36:3
13 1:31, 11:21
13. 10:8

130 36:8
14) 1:32
14604 2:8
149th 1:25, 14:5, 14:22
19-46591. 3:2
1900 2:7
1B 21:10


< 2 >
2 1:30, 15:6, 18:1
2. 3:8, 15:6
200. 1:12
2016 3:23
215 29:2
215. 29:5
23 3:1
2377 1:41
24 2:13, 3:1
25 3:1
26 3:1
27 3:2


< 3 >
3 1:30
377 1:41


< 4 >
410 17:25
410. 18:3


< 5 >
5 22:23, 23:1, 23:5, 25:13, 29:24
501 1:46


< 6 >
6 3:13, 25:13, 29:24
6-1. 1:28
6. 19:2, 22:24, 23:6


< 7 >
7-page 14:1


< 8 >

8 1:30
85 1:46
8710 1:25, 14:5, 14:22


< 9 >
9 1:31
9422 21:9
[128] 1:26
[200] 1:13
[212] 1:11
[49] 1:24
[90] 1:28
[inaudible] 3:23, 4:2, 7:11,
    7:12, 9:15, 10:13, 18:1,
    18:2, 18:3, 20:15, 20:21,
    21:1, 22:9, 25:16


< A >
Aak123@aol.com 35:7
Aakl123@aol 34:24, 35:8
abandon 10:4, 10:16, 10:19
abandoned 11:13
able 5:4, 20:5
above-entitled 40:5
absolutely 12:11, 19:20
acceptable 5:10, 5:16, 30:4,
    30:12, 32:18, 34:21
access 6:15
accommodate 11:2, 13:3
accounting 16:15
accurate 40:4
acknowledged 14:8, 14:17
act 14:10
actual 16:25
actually 7:1, 16:18, 20:21,
    22:8, 29:17, 32:3, 32:24,
    36:19
addition 24:23
additional 24:1, 28:1
address 13:9, 14:5, 31:11,
    31:18, 32:6, 34:12, 34:23,
    35:13, 35:20
addresses 34:8, 34:19
addressing 18:6
adjourn 30:24
adjournment 36:6
ADL 2:12
administrative 37:17, 39:3

administratively 36:14
adversary 26:7, 30:17, 30:25,
    32:10, 32:11, 37:6, 37:22,
    38:1, 38:12, 38:21
ADVISE 1:18
affirmation 29:2
afternoon 3:5, 3:11, 3:17,
    3:24, 4:1, 4:3
agent 3:22, 14:10
agents 16:17
AGREE 1:21, 5:8, 12:20
AGREEABLE 1:16
agreed 14:8
agreement 14:9
agreements 7:22
ahead 7:5, 9:20, 15:18
allowed 17:14, 17:15, 17:17
allowing 4:5
already 5:25, 24:23, 27:11,
    30:11, 31:20
Although 4:9
Altschuler 1:38, 3:6
amendment 37:23
America 7:21
Americas 21:12
amount 15:1, 16:25, 17:1,
    21:11
ancillary 37:22
answer 10:13, 23:16
answering 39:2
anticipated 24:20
anybody 5:5, 31:5, 37:16
anyway 11:25, 18:20
aol 35:14
apologize 12:25, 18:14, 28:11,
    29:9
apparently 10:12
appearance 3:4
APPEARANCES 1:37, 2:1,
    3:3, 3:10
Apple 34:25, 35:3, 35:14
application 10:18
applications 12:13
appreciate 13:11, 16:2, 16:19,
    24:19, 27:21, 38:6
appropriate 4:7, 23:15
argument 8:1, 30:23, 32:19
arguments 8:3, 18:6
Aronow 26:10
ARRANGE 1:16

**ARRANGEMENTS** 1:18
**Ashmeen** 1:6, 1:29, 2:10, 3:2, 3:24, 14:5
**assert** 38:17
**assign** 17:14
**assignments** 16:7, 36:1, 36:10
**Association** 3:15, 3:22
**assurance** 37:9
**assured** 20:6
**attached** 5:25, 6:4, 6:5, 6:7, 17:2, 36:2
**attachment** 34:7
**ATTACHMENTS** 1:29
**attention** 6:11, 14:3
**attitude** 12:17
**AVAILABLE** 1:22
**Avenue** 1:25, 14:6, 14:22
**aware** 7:15

**< B >**
**back** 4:19, 4:20, 4:25, 5:23, 7:4, 8:14, 8:19, 8:23, 11:5, 15:6, 15:13, 15:14, 16:15, 19:6, 19:14, 19:24, 20:19, 20:24, 21:5, 21:20, 21:23, 22:2, 22:10, 23:2, 30:17, 30:22, 32:11, 32:19
**backwards** 29:17
**Bank** 3:15, 3:22, 7:11, 7:21, 17:5
**Bankruptcy** 1:1, 1:34, 14:3, 37:21, 37:25, 38:18
**bar** 14:21, 15:3, 21:15
**Based** 9:24, 11:4, 11:20, 12:4, 17:19
**basically** 19:9, 19:12
**Bausch** 2:7
**Beach** 1:25, 3:19, 9:22, 14:6, 14:23
**become** 12:9
**behalf** 3:19, 11:3
**believe** 26:4, 26:9, 27:10
**belt** 34:14
**beyond** 30:11
**bit** 11:5
**black** 21:13
**blank** 14:15, 15:7, 15:9, 15:10, 21:21

**Board** 1:38, 3:7, 9:22
**BONSIGNORE** 2:6, 3:17, 3:18, 4:16, 4:17, 5:1, 5:9, 5:11, 5:22, 6:2, 6:25, 8:6, 8:8, 8:17, 8:22, 16:3, 23:21, 27:2, 27:16, 27:19, 27:25, 28:2, 28:15, 28:20, 28:22, 30:2, 31:25, 32:17, 34:9, 34:10, 34:15, 34:16, 34:18, 34:25, 35:5, 35:16
**Borah** 1:38, 3:6
**bottom** 15:3, 21:13, 21:14, 21:15
**boundaries** 25:23
**Brandi** 14:18
**Brandy** 14:8
**brief** 36:6
**briefed** 4:8, 4:10, 37:15, 38:12
**briefing** 4:7, 23:2, 23:25, 36:21, 36:25, 37:6, 37:10
**bring** 4:25, 6:10, 18:24
**Broad** 1:46
**Broadway** 1:41
**Brooklyn** 1:7
**business** 12:18

**< C >**
**calendar** 25:14, 25:15, 25:16, 26:14, 30:25, 36:5
**Calendars** 3:1
**call** 13:8, 28:7, 29:7, 30:22
**called** 23:16
**calling** 13:11
**careful** 20:2
**carried** 36:24
**carry** 36:20
**carrying** 36:15
**Case** 3:2, 12:12, 12:15, 23:19, 25:1, 26:6, 27:4, 30:18, 33:16, 37:25, 38:18
**certain** 4:9, 26:7
**Certainly** 20:11, 34:3, 37:23
**certified** 8:9, 8:12, 8:14, 8:18, 8:22, 13:18, 20:6
**certify** 40:3
**chambers** 19:18, 19:24
**CHANCAS** 1:40, 3:5, 3:6, 9:8, 9:10, 9:18, 9:19, 9:20, 9:21, 10:9, 10:10, 10:20, 10:25,

11:10, 13:6, 13:12
**chance** 18:23
**Chapter** 10:8, 11:21
**check** 26:14
**circumstances** 23:15
**claims** 12:22, 23:8
**clarify** 28:25
**class** 33:3, 33:5, 33:11, 33:13, 33:17, 33:19, 34:1, 34:5, 34:6
**clear** 22:22, 34:19
**CLERK** 3:9, 22:3, 39:7
**client** 3:14, 4:16, 5:16, 9:21, 9:22, 9:24, 12:18, 12:22, 13:2, 19:14, 20:8, 27:19, 27:25, 28:15, 28:20, 29:6, 37:20, 38:14, 38:16
**close** 5:5
**code** 14:21
**codes** 15:3, 21:15
**collateral** 16:9, 16:13, 16:21, 16:22
**colleague** 23:21, 28:5, 28:22
**collect** 17:22
**collectors** 16:18
**com** 34:24, 35:4, 35:8, 35:14
**comfortable** 19:8, 19:17, 19:21
**coming** 4:4, 30:17, 32:11
**compare** 13:17, 13:21, 22:12
**compelled** 12:14
**completed** 36:25, 37:6, 37:10
**completely** 7:25, 38:12
**complex** 9:15
**computer** 32:25
**conceivable** 10:6, 11:17
**concept** 11:14
**concern** 31:16, 32:9, 36:9
**concerns** 11:4, 11:8
**conditional** 12:20
**Condominium** 1:41, 3:8
**CONFER** 1:13, 1:16
**conference** 30:18, 30:23
**confused** 33:23
**connection** 24:2, 36:23
**consent** 24:1
**consider** 24:2
**consideration** 36:19
**context** 10:8, 38:18, 38:19
**continue** 34:4

**continues** 34:1
**CONTINUED** 2:1
**convenient** 34:1, 34:2
**copies** 5:23, 5:24, 5:25
**copy** 4:18, 5:20, 6:1, 6:4, 6:15, 6:17, 6:19, 7:9, 7:12, 8:9, 8:12, 8:14, 8:20, 8:22, 9:2, 13:18, 18:24, 19:1, 19:18, 20:4, 20:6, 21:6, 22:2, 22:7, 22:8, 22:10, 22:13, 22:14, 33:15
**Corp** 1:40, 3:8
**correct** 28:2
**correspond** 31:12
**COUNSEL** 1:15, 4:19, 4:20, 5:2, 31:9
**Countrywide** 7:1, 7:2, 7:11, 7:16, 7:20, 13:22, 14:14, 14:15, 15:1, 15:11, 17:23
**course** 7:15, 9:6, 15:24, 19:3, 29:23, 29:24
**courtroom** 3:9, 6:14, 19:17, 19:25, 21:25, 22:1
**crazy** 34:13
**Creditor** 1:38, 3:7, 23:8, 23:15
**creditors** 23:20, 25:9
**Crossway** 2:13
**currently** 31:8

**< D >**
**Date** 26:15, 30:25, 40:11
**dated** 9:1, 14:3, 14:21, 21:9
**dates** 26:4
**David** 14:6, 14:17, 21:22
**day** 39:8
**days** 33:14, 34:13
**deadline** 24:22, 25:7, 25:9, 25:11, 26:8, 26:24, 27:9, 30:5
**deadlines** 26:6
**deal** 18:21, 37:24
**dealing** 11:14
**deals** 28:6
**debt** 16:18
**Debtor** 1:8, 1:15, 1:17, 1:18, 2:10, 3:25, 4:5, 10:15, 23:9, 31:8, 31:11, 31:12, 36:11
**decide** 39:3
**decision** 9:14, 12:18, 13:4,

30:21, 38:21
**Deer** 2:14
**defendants** 26:7
**denied** 10:14, 10:18
**Department** 14:4
**depending** 12:10
**deputy** 19:18, 19:25
**Derosa** 26:10
**described** 15:11
**describing** 14:13
**determined** 11:23
**different** 6:7, 23:19
**difficult** 9:4
**DIRECT** 1:22, 33:9
**DIRECTING** 1:13
**directly** 17:17, 38:1
**disallowed** 12:21
**disclaimer** 37:4, 37:5, 38:9
**discuss** 12:24
**discussion** 5:1
**dismiss** 26:8, 26:9, 35:21, 37:24
**dispute** 16:25
**disregard** 32:15
**DISTRICT** 1:2
**Docket** 24:3, 28:3, 28:23, 29:2, 29:5, 36:3, 36:4, 36:8
**document** 7:6, 14:1, 14:2, 15:12, 15:13, 15:21, 21:7, 25:4, 29:1, 30:8, 31:17, 31:18, 32:10, 32:12
**DOCUMENT(S)49** 1:12, 1:23
**documents** 9:15, 14:11, 14:13, 17:19, 22:6, 24:7, 28:3, 30:7, 32:20, 34:5, 34:6, 34:10
**doing** 22:10, 33:1, 33:21
**dollar** 16:25
**done** 4:6, 10:24, 22:14, 23:24, 39:5
**double-sided** 22:10
**down** 30:23, 32:8, 32:18
**drift** 18:5
**Drive** 2:13
**DROPBOX** 1:32
**due** 27:5
**Duly** 38:3
**Dwelling** 3:16, 38:16

**< E >**
**EASTERN** 1:2
**efficiency** 8:9
**effort** 12:3
**either** 6:2, 9:3, 10:24
**ELECTRONIC** 1:32, 2:47, 40:4
**elonged** 15:9
**email** 6:3, 31:9, 31:11, 31:18, 32:1, 32:4, 32:6, 33:24, 34:7, 34:10, 34:11, 34:19, 34:22, 35:13
**emailed** 32:15
**emailing** 32:10
**emails** 16:11, 31:15
**end** 26:11
**endorsed** 21:21
**endorsement** 14:14, 15:6
**endorsing** 14:15
**enforce** 17:22
**enough** 8:15, 37:13
**entitled** 33:16
**error** 25:15
**ESQ** 1:40, 1:45, 2:6
**essence** 28:21
**establish** 4:7
**estate** 11:16, 12:4
**event** 26:16
**everybody** 4:3, 4:12, 5:2, 11:3, 11:4, 18:11, 20:3, 30:13, 35:21, 37:11
**Everything** 8:4, 18:17, 20:3, 24:11, 24:15, 30:15, 33:2, 33:7, 37:14
**examination** 5:15
**exceed** 10:4
**except** 27:24
**executive** 15:11
**EXHIBIT** 1:29, 1:30, 1:31, 1:32
**EXHIBITS** 1:26, 36:4
**expect** 12:3
**expectations** 37:11
**expensive** 33:10
**explain** 9:4, 9:13
**explanation** 9:11
**expressing** 38:23
**extended** 11:8
**extension** 10:21, 11:9
**extent** 25:5
**extra** 18:24

**< F >**
**fashion** 12:16
**favor** 15:1, 21:12
**feel** 12:14, 18:13, 20:19, 20:20, 20:24, 20:25
**Feldman** 28:6
**few** 10:10, 12:7
**file** 10:24, 12:25, 16:9, 16:13, 16:21, 16:22, 23:10, 23:16, 24:7, 24:22, 25:8, 25:11, 26:7, 26:12, 26:13, 26:24, 26:25, 27:3, 27:4, 28:7, 28:20
**FILED** 1:29, 1:32, 6:1, 17:20, 17:25, 19:2, 23:5, 23:7, 23:25, 24:3, 24:23, 25:3, 25:4, 26:9, 27:11, 27:18, 27:20, 28:5, 28:23, 29:1, 29:6, 29:8, 29:9
**files** 23:8
**filing** 11:14
**finding** 12:21
**fine** 5:4, 8:4, 12:8, 24:4, 24:20, 24:24, 26:19, 27:16, 31:16, 31:19, 31:23, 32:2, 34:3, 38:25
**fired** 19:15
**first** 12:14, 14:2, 14:24, 15:2, 15:3, 21:12, 21:14, 33:3, 33:5, 33:11, 33:13, 33:17, 33:19, 34:1, 34:5, 34:6
**first-class** 32:25
**fit** 36:14
**flexible** 32:22
**flipped** 28:15
**follow** 18:3
**foreclosure** 11:24
**foregoing** 40:3
**forth** 11:18
**forward** 5:16
**Friday** 26:12
**FRIEDMAN** 1:44
**front** 7:10, 7:13, 9:1, 9:5
**Fugate** 23:22, 28:5, 28:22, 29:1, 29:6, 32:5, 32:6
**full** 3:13
**fully** 36:22
**funds** 11:25

**furnishes** 34:11

**< G >**
**gave** 11:2
**Gelman** 14:4
**generally** 23:12
**gets** 19:11
**getting** 28:4
**Gilman** 2:5, 3:18
**Give** 9:11, 11:6, 24:11, 28:23, 29:21, 30:2, 32:6, 39:6
**given** 38:18
**giving** 11:12
**Goidel** 1:39, 3:6
**Goldstein** 1:38, 3:6
**gravamen** 38:1
**guess** 10:20, 10:21, 11:10

**< H >**
**H-O-S-E-I-N** 35:14
**hand** 6:6, 20:24, 37:12, 37:13
**handle** 36:13
**handled** 37:21
**handling** 27:10
**handwritten** 21:24
**happen** 23:13
**happened** 23:4, 23:19
**happens** 12:10, 19:15, 23:17
**happy** 8:10, 19:5
**health** 4:12
**hear** 5:4, 13:23, 18:18, 20:16
**heard** 8:6, 17:10
**HEARING** 1:11, 1:19, 4:4, 7:25, 9:13, 10:12, 10:14, 16:5, 19:22, 24:16, 25:20, 35:25, 36:5, 36:6
**help** 19:21
**helped** 31:22
**helpful** 37:3, 37:24
**helps** 31:14
**hold** 9:17, 19:11
**holding** 4:16, 14:11
**holes** 14:24
**Home** 13:20, 14:14, 14:15, 15:1
**Homes** 1:40, 3:7
**honestly** 30:6
**HONORABLE** 1:33
**Hopefully** 19:21

**hoping** 10:10, 12:7
**Hosein** 4:1, 4:2, 35:2, 35:12, 35:13, 35:14, 35:15, 35:17
**Hossain** 31:9, 31:14
**housekeeping** 4:6
**Howard** 1:25, 3:19, 9:22, 14:6, 14:23
**hundred** 28:4
**hurt** 34:6
**hypothetical** 11:12
**hypothetically** 12:13


**< I >**
**identified** 24:4
**identify** 17:6
**important** 16:22, 17:12, 18:15, 19:9, 25:2, 33:1, 36:19
**impose** 13:15
**imposition** 33:18, 33:21
**imprinted** 21:15
**IN-PERSON** 1:11, 1:13
**in-rem** 11:15
**Inc** 2:12
**inclined** 12:17
**include** 29:24, 29:25
**includes** 29:18
**including** 16:10, 29:20
**incorrect** 18:2
**incredibly** 19:9
**information** 17:13
**initialed** 15:2, 15:5, 21:14
**ink** 15:5, 16:12, 21:13, 21:18, 21:24
**inked** 15:4
**INSPECT** 1:17, 4:5, 4:20, 20:13, 28:17
**INSPECTION** 1:11, 1:14, 1:19, 1:21, 8:1, 22:21, 23:22, 24:16, 24:17, 28:18
**INSPECTION(RE** 1:23
**instead** 22:10
**intend** 5:15
**interest** 8:8, 17:14, 20:3
**interrupt** 10:11, 18:5, 25:20
**investors** 16:17
**invite** 37:16
**issue** 10:22, 12:5, 12:7, 12:10, 13:9, 17:7, 30:21, 38:20
**issues** 11:3, 12:15, 23:3, 36:11,

37:20, 37:25, 39:3
**IV** 1:29, 3:16


**< J >**
**Jeffrey** 1:40, 3:6, 9:10
**Jil** 1:33, 22:4
**JJK** 1:32
**Judge** 1:34, 22:4
**judgment** 24:1


**< K >**
**Katherine** 1:45, 3:12
**keep** 17:16
**kind** 8:14, 9:4, 9:13, 22:14, 23:3, 23:19, 24:20, 27:23, 27:24, 28:21, 34:14, 37:12
**Kingston** 35:4
**knows** 20:2


**< L >**
**label** 14:21
**labels** 15:4
**last** 18:4, 21:23, 25:2, 25:11, 30:3
**last-minute** 9:14
**late** 25:5
**law** 10:6, 11:23, 12:5, 17:13, 17:23
**lawyer** 19:12
**least** 33:3
**leave** 8:20, 8:23, 13:8, 21:25, 22:15, 27:6
**leaving** 8:18, 27:6
**left** 4:10
**legal** 3:22, 18:6, 31:6
**Lender** 7:18, 7:21, 9:25, 10:7, 11:23, 13:21, 16:16, 17:10, 17:14, 19:10, 21:12
**Leonard** 4:23, 8:14, 13:15, 15:13, 20:1, 21:2, 22:6, 30:19
**letter** 9:1, 14:2, 14:6, 14:10, 14:12, 14:18, 23:21
**lien** 12:4
**liens** 12:22
**limited** 4:5, 23:10
**Lisa** 40:8

**list** 17:1
**literally** 17:18
**litigation** 12:7
**little** 20:20, 20:25, 25:20, 29:17, 33:23
**LLC** 1:27, 3:14, 3:21, 14:7
**LLP** 1:44, 14:4
**Loan** 1:26, 1:44, 2:5, 3:12, 3:14, 3:21, 14:7, 17:15
**Loans** 14:14, 14:15, 15:1
**local** 25:1
**LOCATED** 1:25
**Lomb** 2:7
**London** 35:4
**look** 4:23, 7:13, 8:21, 8:24, 13:14, 13:20, 15:21, 21:4, 21:5, 21:18, 24:14, 24:15, 25:16, 26:5, 27:2, 29:13, 30:7
**looked** 4:22, 23:23
**looking** 4:14, 7:6, 11:9, 13:25, 26:5, 32:2
**looks** 6:7, 15:12, 21:17
**lot** 18:19, 27:11
**loudly** 25:25, 28:12


**< M >**
**ma'am** 7:5
**machines** 33:15
**Magnolia** 21:9
**mail** 19:7, 32:14, 32:24, 32:25, 33:1, 33:3, 33:5, 33:8, 33:10, 33:11, 33:14, 33:17, 33:19, 34:1, 34:5, 34:6
**mailed** 32:13
**mailing** 33:25
**main** 30:18
**Management** 1:27, 3:12, 3:14, 3:21, 14:7
**Managers** 1:39, 3:7
**Managing** 21:22
**masks** 25:23
**matter** 16:14, 17:13, 31:8, 36:5, 40:5
**Matters** 1:4, 23:18, 24:8, 37:17, 37:22, 38:15
**MAZER-MARINO** 1:33
**Mazer-moreno** 22:4
**me.** 32:16

**mean** 18:5, 18:6, 25:19, 38:22
**Member** 21:22
**method** 34:1, 34:2
**MICHELE** 2:6
**Michelle** 3:18, 15:7, 15:10
**mind** 34:22
**mindful** 4:12, 17:11, 18:11, 19:16, 25:24, 25:25
**minute** 4:11
**missed** 15:20
**missing** 35:10
**mistaken** 28:2
**moment** 4:17, 15:15, 15:19, 21:3, 22:1, 24:19, 28:23
**money** 11:16, 13:2, 13:3
**morning** 24:1
**mortgage** 16:8, 17:22, 36:2, 36:10
**mortgagee** 16:9
**Mortgagor** 14:4
**MOTION** 1:24, 1:26, 3:20, 8:4, 10:14, 10:15, 10:18, 11:13, 12:8, 22:22, 23:5, 23:6, 23:7, 23:18, 27:23, 27:25, 28:14, 28:15, 28:16, 28:18, 29:3, 29:19, 30:12, 36:1, 37:24, 38:10, 38:20
**motions** 6:8, 25:4, 26:8, 26:9, 30:9, 36:23
**movant** 30:3
**moved** 36:6
**MUTUALLY** 1:16
**myself** 18:14, 33:2


**< N >**
**Nahins** 1:38, 3:6
**nail** 32:8, 32:18
**name** 3:13
**National** 3:15, 3:22
**necessarily** 37:8
**need** 10:23, 10:24, 11:7, 11:18, 13:16, 19:15, 24:7, 25:24, 25:25, 26:15, 26:16, 26:17, 26:20, 28:11, 32:23
**needed** 11:2
**New** 1:2, 1:7, 1:42, 1:47, 2:14, 14:23, 21:10, 23:12
**next** 19:6, 22:22, 26:5, 26:11
**nice** 34:14

**Nobody** 5:5, 7:22
**normally** 20:23
**NOTE.(RE** 1:12
**noted** 38:3
**notes** 4:5, 4:14, 17:18, 19:9, 29:25
**nothing** 7:23
**Notice** 14:21, 20:20, 36:8
**Number** 3:8, 3:13, 12:13, 18:1, 19:2, 21:10, 22:23, 22:24, 23:1, 23:5, 23:6, 25:13, 29:2, 29:5, 29:24, 36:3
**numerous** 5:24
**NY** 1:25, 1:42, 1:47, 2:8

**< O >**
**object** 28:16
**objected** 28:1
**objecting** 12:19, 23:5, 23:6, 23:8, 23:9
**OBJECTION** 1:28, 9:24, 10:24, 22:23, 22:24, 22:25, 23:14, 23:20, 25:12, 25:13, 36:7, 36:12, 37:1, 38:11
**objections** 23:4, 23:12, 24:3, 24:5, 24:8, 25:5, 26:13, 27:1, 27:14, 29:23, 30:9, 37:1, 38:19
**obligated** 27:4
**observations** 29:20, 29:25
**obvious** 27:10
**occasion** 17:9
**office** 19:6, 33:14
**OFFICER** 3:1
**often** 24:25
**Okay** 4:8, 5:7, 5:9, 5:18, 6:21, 6:22, 8:5, 9:7, 10:25, 15:12, 18:8, 19:8, 20:8, 20:22, 21:5, 21:6, 22:2, 22:5, 26:2, 26:3, 26:4, 26:21, 27:15, 27:18, 27:22, 29:11, 29:17, 29:22, 31:2, 31:3, 31:21, 31:24, 32:8, 33:22, 34:20, 34:21, 35:11, 37:10, 39:1
**Once** 4:22, 8:22
**One** 5:14, 9:17, 12:11, 12:21, 15:15, 15:17, 15:19, 15:21, 18:21, 22:1, 22:6, 22:7, 28:17, 28:23, 29:18, 31:7,

33:13, 35:22, 37:4, 37:5, 37:12, 39:6
**opportunity** 10:15, 13:14, 23:10, 23:11, 25:6, 28:16, 29:21, 30:2, 30:13
**opposed** 38:20
**opposition** 9:23, 10:1, 10:22, 11:18, 12:9
**ORDER** 1:11, 1:13, 12:20, 15:7, 15:10, 21:21
**ORDERED** 1:14, 1:20
**original** 4:18, 7:18, 8:5, 8:15, 8:18, 8:20, 8:23, 13:16, 13:17, 14:13, 14:19, 14:20, 14:21, 15:4, 15:5, 16:22, 17:8, 17:14, 21:11, 21:13, 21:19, 22:7, 22:13, 22:15, 22:19, 23:18
**Oviatt** 2:5, 3:18, 14:4
**owed** 17:1
**Ozone** 3:13, 21:10

**< P >**
**Page** 14:25, 15:2, 15:3, 15:5, 15:6, 15:9, 21:13, 21:14, 21:17, 21:18, 21:20, 21:23, 22:9, 22:11, 33:6
**pages** 14:2, 14:16, 22:8
**paid** 12:1, 12:4, 12:14
**paper** 22:11
**papers** 9:25, 31:10
**pardon** 4:9
**Park** 2:14, 3:13, 21:10
**part** 16:22
**Parties** 1:13, 1:20, 3:9, 30:21
**party** 3:3
**pass** 15:13
**passed** 21:7
**Patchogue** 1:40, 3:7
**patience** 15:18
**pause** 9:15
**pay** 15:6, 15:9, 21:20
**payment** 17:6
**payments** 16:13, 16:24, 17:1, 17:3, 17:4, 17:17
**payout** 11:21
**PC** 3:7
**Pear** 35:1
**people** 9:15, 17:18, 18:19,

33:13, 33:14
**percent** 28:4
**perfect** 7:19
**perhaps** 10:21, 11:19, 12:19, 37:14
**permit** 30:6
**permitted** 25:1
**person** 23:9
**personally** 19:1, 27:9
**ph.** 14:7, 14:8
**phone** 3:4
**phoned** 9:11
**photocopy** 19:5
**pick** 13:15
**Place** 1:16, 2:7, 4:17, 11:4
**pleading** 24:1, 24:9, 25:2, 25:11, 28:6, 29:18, 30:11, 32:12, 36:3
**pleadings** 5:25, 28:2, 30:12, 37:12
**Please** 3:4, 3:10, 5:14, 7:14, 15:16, 15:23, 20:10, 22:5, 25:21, 26:20, 28:2, 34:23
**podium** 4:18, 5:3, 7:4, 8:12, 8:15, 15:14, 18:23, 20:10, 22:6, 22:12, 22:15
**point** 10:3, 13:8, 28:7, 30:6
**point.** 13:8
**position** 11:25
**possibility** 11:20
**possible** 5:6, 5:21, 12:6, 12:13, 26:20
**posture** 27:24
**practical** 31:8
**practice** 30:12
**precisely** 17:19, 29:16
**preference** 37:19, 38:15, 38:21, 38:23
**prefers** 36:17
**prejudice** 10:2
**prepared** 24:18, 29:12, 36:13
**president** 15:11
**pretty** 30:15
**Previti** 40:8
**primarily** 37:21
**principle** 21:11
**print** 20:20, 20:25
**priority** 33:1, 33:3, 33:7, 33:10
**probably** 12:3
**problem** 6:3, 27:22, 38:5, 38:8,

39:2
**procedural** 39:3
**PROCEDURE** 1:21, 5:5
**proceed** 5:7, 11:23
**proceeding** 30:18, 31:1, 37:6, 38:2, 38:21
**Proceedings** 2:47, 40:5
**process** 4:6, 32:18
**produced** 2:49
**productive** 35:19
**PROMISSORY** 1:12, 1:14, 16:23, 17:8, 17:18, 21:8
**prompt** 12:16
**PROOF** 1:27, 1:28, 17:2, 17:7, 17:25, 30:8, 30:9
**proper** 17:25, 32:13, 32:14
**properly** 20:1, 32:20
**PROPERTY** 1:25, 3:13, 3:20, 9:22, 9:23, 10:5, 10:16, 10:19, 11:12, 11:13, 14:5, 14:22
**proprietary** 19:11
**protect** 20:7
**protocol** 5:15
**provide** 8:10
**provided** 12:21
**punch** 21:8
**punched** 14:24
**purchaser** 17:21
**purpose** 4:4, 7:25
**put** 8:12, 9:23, 10:22, 11:4, 15:14, 18:23, 20:10, 20:24, 22:6, 22:10, 24:17, 36:7, 37:10, 37:23
**putting** 8:17

**< Q >**
**question** 10:13
**questions** 30:22, 31:5, 37:16, 39:2
**quick** 13:14
**quickly** 19:22
**quite** 27:11

**< R >**
**raise** 23:12, 24:9, 37:17
**raised** 23:11, 23:18, 36:9, 39:4
**raises** 23:17

**raising** 36:11
**rather** 32:25
**Re** 1:4
**reach** 16:11
**read** 15:19
**reading** 16:5
**realize** 24:16
**really** 5:3, 10:7, 11:15, 11:20, 12:18, 13:4, 23:24, 24:19
**reason** 5:3, 6:12, 9:16, 10:3, 11:1, 11:11, 17:11
**reasons** 27:10, 28:17, 33:13
**receive** 18:2
**received** 9:2
**receiving** 33:24
**recipient** 14:10
**record** 14:1, 34:19, 34:22
**recorded** 2:47
**recording** 2:47, 40:4
**recourse** 15:7, 15:10, 21:21
**redactions** 19:3
**references** 14:22
**reflected** 17:5, 17:6
**reflects** 11:6
**regard** 36:12
**regarding** 14:4
**rejection** 36:8
**RELATED** 1:12, 1:23, 23:3, 24:4, 37:13, 38:1
**relates** 21:9
**RELATING** 1:27, 37:20, 38:15
**RELIEF** 1:24, 3:20, 22:23, 27:23, 28:14, 29:3, 29:19, 30:9, 37:1, 38:10
**remain** 22:1
**remains** 4:8
**remember** 7:25
**repeatedly** 36:11
**repeating** 18:13, 38:6
**replies** 23:20
**Reply** 11:18, 23:10, 23:11, 23:14, 23:16, 23:17, 24:25, 27:5, 27:18, 28:8, 28:19, 28:21, 29:14, 32:12
**represent** 3:21
**represented** 31:8
**request** 5:19, 10:1, 10:4, 10:16
**requested** 16:11
**requesting** 8:25
**required** 33:11, 34:12

**requirement** 17:16
**resolve** 19:21, 38:17
**resolved** 12:15
**resolving** 38:20, 39:2
**respect** 3:19, 12:3, 12:22, 14:11, 16:21, 16:24, 20:3, 22:22, 23:4, 24:7, 26:13, 26:25, 27:13, 29:23, 29:25, 30:8, 38:15
**RESPECTING** 1:14
**respond** 13:5, 17:11, 25:2, 25:6, 25:10, 26:9, 30:5
**response** 23:8, 23:11, 23:14, 28:19
**responses** 26:7
**retained** 3:20
**retreat** 4:20
**retrieve** 4:23, 8:13, 8:15, 22:19
**return** 31:1, 31:2
**reverse** 27:24
**review** 22:14, 29:11, 37:14
**reviewing** 5:20, 9:15
**Rider** 14:12, 14:16, 14:19
**right-hand** 21:14
**rights** 10:5, 20:7
**rise** 22:3, 22:4, 39:7
**Rochester** 2:8
**Rooker** 28:6
**rule** 36:22, 36:25, 37:5, 37:9, 38:10, 38:11
**ruled** 36:1
**rules** 25:1, 33:11
**Rushmore** 1:17, 1:26, 1:44, 2:5, 3:12, 3:14, 5:21, 7:9, 7:11, 9:1, 14:7, 14:17, 24:2
**RUSHMORES** 1:15


**< S >**
**S-J-O-L-A-N-D-E-R** 15:8
**S-T-E-V-E-N** 35:13
**safe** 5:6
**safety** 4:13
**sale** 12:1
**saying** 10:2, 11:1, 11:11, 13:23, 20:21, 32:11, 37:7
**says** 18:3, 21:20
**SC6** 3:23
**scan** 33:15
**scenario** 11:12, 23:13

**schedule** 4:7, 11:3
**SCHEDULED** 1:19
**SCHEDULING** 1:11, 11:3
**seated** 22:5, 35:18
**Sec** 14:8, 14:18
**second** 5:14, 9:17, 11:24, 14:25, 15:17, 21:17, 21:18, 21:20, 22:9, 22:11, 39:6
**seems** 23:24
**seen** 9:25
**sees** 36:14
**Seguliva** 14:17
**Segulvia** 14:6
**sell** 10:1, 10:18, 17:18
**send** 5:23, 30:21, 32:2, 34:4, 34:5, 34:10
**sending** 6:3, 31:17, 33:2
**sends** 31:17
**sense** 7:19
**separate** 17:7
**September** 26:12, 26:24, 29:22, 30:1
**Series** 1:28, 3:16
**serve** 31:11, 33:19
**served** 32:20
**service** 2:49, 32:11, 32:12, 32:14, 32:18, 33:9, 33:16, 33:24, 34:2
**servicer** 3:15, 16:9
**servicers** 16:17
**Services** 1:27, 2:12, 3:12, 3:14, 3:21, 14:7
**Servicing** 1:45, 2:6, 3:21
**serving** 31:10
**set** 24:21, 25:7, 25:9, 30:4, 30:23
**Shahdood** 26:10
**SHALL** 1:16, 1:18
**sheet** 22:11
**shot** 34:7
**side** 20:5, 21:14
**sight** 19:13
**sign** 20:23
**signature** 15:5, 20:19, 21:17
**SIGNED** 1:12, 1:23, 14:6, 14:16, 15:7, 21:22
**similar** 5:15
**simpler** 16:8
**simply** 17:15, 18:7
**sir** 10:23

**sit** 24:6, 24:23
**situation** 11:22
**Sjolander** 15:8, 15:10
**snail** 32:14
**Sometimes** 23:14, 23:17
**somewhat** 12:9
**son** 31:14, 31:18, 32:15, 34:11
**soon** 26:20
**sooner** 31:2
**sorry** 6:18, 8:17, 10:11, 20:16, 20:17, 24:12, 26:18, 28:10, 32:5, 35:22
**sort** 9:13
**sound** 2:47, 40:4
**spare** 19:1
**speaking** 25:25
**speaks** 25:21
**Spector** 21:22
**spend** 12:19, 13:1, 13:2, 16:6
**sponte** 10:17
**St** 1:46
**stamp** 14:20
**stamped** 21:13, 21:18, 21:19, 21:24
**stand** 10:17
**standing** 37:20, 37:25, 38:16, 38:17
**staple** 20:1
**start** 3:3, 4:15, 25:10
**started** 6:24
**state** 10:6, 11:23, 12:5, 16:18, 17:23
**statements** 17:5
**STATES** 1:1, 1:34
**stating** 16:16, 34:22
**status** 30:18, 30:23
**STAY** 1:24, 10:5, 22:23, 27:23, 28:14, 29:3, 29:20, 30:10, 37:1, 38:10
**step** 7:4
**stepped** 4:19
**steps** 8:13, 20:7, 22:22
**Steven** 4:2, 35:13
**stick-on** 14:21
**stickers** 21:16
**STRIKE** 1:26, 25:4, 36:1, 38:20
**stuff** 31:15, 33:15
**sua** 10:17
**submitted** 9:25, 36:22
**substantively** 36:10

**suffice** 16:14
**sufficient** 11:25
**suggest** 33:12
**suggestion** 4:15
**Suite** 1:46
**support** 25:12, 29:2
**supposed** 9:23
**sur** 23:16, 24:25, 27:4, 27:18, 28:8
**suspenders** 34:14


**< T >**
**table** 4:19, 4:21, 8:23
**tables** 5:2
**talks** 23:22
**telephone** 1:42
**TELEPHONIC** 1:19, 1:24
**term** 27:4
**thanks** 21:6
**There'd** 23:14
**they've** 37:22
**thinking** 10:2, 10:3, 24:21
**third** 22:11
**though** 5:24, 20:1, 22:25, 24:21, 24:25
**thoughts** 31:5
**three** 22:8
**tie** 36:10
**tied** 37:8
**Tiki** 1:28, 7:12, 38:16
**Title** 3:22, 3:23
**today** 22:21, 22:25, 24:6, 25:4, 26:4, 28:17, 28:22, 29:13, 31:4, 31:9, 35:21, 36:6, 39:5
**tomorrow** 9:24
**top** 7:7, 14:20, 14:24, 21:8
**touch** 4:10
**tracking** 33:3
**Transcriber** 2:12
**transcript** 2:49, 16:6, 40:4
**Transcription** 2:12, 2:49
**transfer** 36:2, 36:3
**TRANSFERS** 1:27
**trouble** 25:20
**true** 12:11, 40:3
**Truman** 4:16, 29:6, 29:7
**Trust** 1:29, 3:15, 3:16, 3:23
**Trustee** 3:15, 3:23, 10:1, 10:4, 10:16

**trying** 33:2
**two** 14:2, 14:16, 14:24, 21:15, 21:23, 22:6, 25:9, 26:13, 27:8, 36:25
**two-hole** 21:8
**two-page** 14:18, 21:7
**two-sentence** 9:11
**typical** 23:13


**< U >**
**underlying** 37:21
**understand** 6:6, 6:13, 7:24, 8:4, 17:24, 18:17, 26:19, 36:9
**understanding** 29:14
**undo** 33:18, 33:20
**unexpected** 13:1
**Unfortunately** 13:3, 18:25
**Unit** 21:10
**UNITED** 1:1, 1:34
**unless** 37:25
**unnecessary** 12:9
**unpredictable** 12:12
**until** 37:5, 38:12
**untimely** 36:7


**< V >**
**valid** 31:11
**VARTOLO** 1:44
**verified** 19:1
**VIA** 1:32, 1:42, 33:19, 34:10
**vice** 15:11


**< W >**
**wait** 12:17, 38:11
**walk** 11:5
**wanted** 13:8, 16:12, 16:18, 20:15, 24:10, 37:10
**wear** 38:23
**WEDNESDAY** 1:15
**week** 19:7, 26:11
**weeks** 11:11, 12:7, 27:8
**wet** 16:12
**whatever** 4:8, 7:10, 7:13, 10:3, 10:5, 11:13, 11:24, 16:13, 24:22, 25:8, 26:12, 26:25, 29:19, 29:20, 29:24, 30:14,

32:12, 38:24
**whether** 12:19, 13:4, 17:7, 38:16
**whole** 9:12, 11:14
**Wholesale** 21:12
**WILL** 1:22, 5:5, 6:2, 8:14, 16:8, 17:13, 19:6, 19:15, 19:23, 19:24, 26:14, 27:20, 30:2, 30:7, 30:21, 34:4, 34:5, 36:22, 36:24, 37:23
**wish** 10:21
**withdraw** 10:6, 11:17
**within** 37:21, 37:25
**Without** 10:2, 15:7, 15:10, 19:10, 21:21
**wondering** 26:11, 33:25
**Woods** 2:5, 3:18, 14:4
**Woodsdefaultservices.co m** 14:9
**word** 30:3
**work** 23:2
**working** 25:15, 33:14
**works** 23:7, 23:12
**worth** 12:2
**wrap** 12:14
**wrapped** 36:16


**< Y >**
**yesterday** 10:12, 36:5, 36:9
**York** 1:2, 1:7, 1:42, 1:47, 2:14, 14:23, 21:10


**< Z >**
**Zooming** 31:22