UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x

In re

Ashmeen Modikhan,

              Debtor.

---------------------------------------------------x

Chapter 7

Case No. 1-19-46591-jmm

MEMORANDUM AND DECISION ON:  MOTION FOR RELIEF FROM STAY AS TO THE
PROPERTY LOCATED AT 8710 149TH AVENUE, HOWARD BEACH, N.Y. 11414;
OBJECTION TO MOTION FOR TERMINATION OF AUTOMATIC STAY AND
ALLOWANCE OF PROOF OF CLAIM; OBJECTION TO PROOF OF CLAIM #6-1 TIKI
SERIES IV; MOTION TO STRIKE EXHIBITS BY RUSHMORE LOAN MANAGEMENT
SERVICES, LLC RELATING TO TRANSFERS OF PROOF OF CLAIM 6-1

Appearances:

**Ashmeen Modikhan**
94-22 Magnolia Court, Unit 1B
Ozone Park, NY 11753
*Debtor*

**Katherine Heidbrink**
Friedman Vartolo, LLP
1325 Franklin Avenue, Suite 160
Garden City, NY  1530
*Counsel for Rushmore Loan Management Services, LLC as servicer for*
*U.S. Bank Trust National Association, as Trustee of Dwelling Series IV Trust*

**Aleksandra K. Fugate**
Woods Oviatt Gilman LLP
500 Bausch & Lomb Place
Rochester, NY 14604
*Counsel for Rushmore Loan Management Services, LLC as servicer for*
*U.S. Bank, National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust*

**HONORABLE JIL MAZER-MARINO,**
**UNITED STATES BANKRUPTCY JUDGE**

<u>INTRODUCTION</u>

Before the Court are four contested matters:

1.  The motion for relief from the automatic stay (the "Lift-Stay Motion") filed on behalf
    of U.S. Bank, National Association as Legal Title Trustee for Truman 2016 SC6 Title
    Trust ("Truman") with respect to Ashmeen Modikhan's (the "Debtor") investment
    property located at 87-10 149th Avenue, Apt. 5N, Howard Beach, New York (the
    "Investment Property").  (ECF No. 49). [1]

2.  The Debtor's Objection (the "Investment Prop. Claim Objection") to Claim No. 5-1
    (the "Investment Prop. Proof of Claim"), filed on behalf of Truman asserting a claim
    secured by the Investment Property.  (ECF No. 89).

3.  The Debtor's Objection (the "Residential Prop. Claim Objection" and, together with
    the Investment Prop. Claim Objection, the "Claim Objections") to Claim No. 6-1 (the
    "Residential Prop. Proof of Claim" and together with the Investment Prop. Proof of
    Claim, the "Proofs of Claim"), filed on behalf of Tiki Series IV Trust ("Tiki"),
    asserting a claim secured by the Debtor's primary residence located at 94-22
    Magnolia Court, Unit 1B, Ozone Park, New York (the "Residential Property").  (ECF
    No. 90).  Tiki assigned the Residential Prop. Proof of Claim to U.S. Bank Trust
    National Association, as Trustee of Dwelling Series IV Trust ("Dwelling").

4.  The Debtor's Objection (ECF No. 128) (the "Claim Transfer Objection") to the
    Notice of Transfer (ECF No. 113) of the Residential Prop. Proof of Claim from Tiki

---

[1]      References to "(ECF. No. ___)" are to entries on the docket in this case.

to Dwelling and motion to strike the exhibits (ECF Nos. 114, 115) to the Notice of

Transfer.

For the reasons set forth below, the Claims Objections and the Claim Transfer Objection

are denied and the Lift-Stay Motion is granted.

## JURISDICTION

The Court has jurisdiction to consider these contested matters under 28 U.S.C. §§ 157

and 1334, and the Standing Order of Reference entered by the United States District Court for

the Eastern District of New York, dated August 28, 1986, as amended by the Order dated

December 5, 2012.  Venue is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding

under 28 U.S.C. § 157(b)(2)(A) and (G).

## BACKGROUND

### The Debtor's Prior Bankruptcy Cases

On June 28, 2012, the Debtor, through her attorney, commenced a case under Chapter 7

of the Bankruptcy Code (the "First Bankruptcy Case") by filing a voluntary petition for relief

with the Clerk of this Court.  (*In re Modikhan*, Case No. 12-44750 (Bankr. E.D.N.Y), ECF No.

1).

The Debtor's Schedule A - Real Property disclosed her fee simple ownership of the

Investment Property and the Residential Property.  (Sched. A, Case No. 12-44750, ECF No. 1).

The Debtor's Schedule of Creditors Holding Secured Claims listed BAC Home Loans

Servicing LP as a secured creditor with claims secured by mortgages on the Residential Property

and the Investment Property.  (Sched. D, Case No.12-44750, ECF. No. 1).  The Debtor noted on

that schedule that the Investment Property was in foreclosure and would be surrendered.  (Sched.

D, Case No.12-44750, ECF. No. 1).

On October 10, 2012, the Debtor was granted a discharge in the First Bankruptcy Case. (Case No. 12-44750, ECF No. 12).

On July 9, 2019, the Debtor, proceeding *pro se*, commenced a second Chapter 7 case, *In re Modikhan*, Case No. 19-44172 (Bankr. E.D.N.Y), by filing a petition for relief with the Clerk of this Court.  The Debtor did not file Schedules of Assets and Liabilities, a Statement of Financial Affairs or other documents required under the Bankruptcy Code.  (Case No. 19-44172, ECF No. 16).  As a result, on September 11, 2019, the Court entered an order directing the Clerk's office to dismiss the case.  (Case No. 19-44172, ECF No. 18).  That bankruptcy case was closed on September 27, 2019.  (Case No. 19-44172, ECF No. 21).

**The Current Bankruptcy Case**

On October 31, 2019, Debtor, proceeding *pro se*, commenced this case by filing a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.  (ECF No. 1).  The case was assigned to the Honorable Elizabeth S. Stong, United States Bankruptcy Judge.  Marianne DeRosa was appointed as the Chapter 13 Trustee.  The deadline for creditors to file proofs of claim was January 9, 2020.

On November 21, 2019, Aronow Law P.C. filed a notice of appearance as Debtor's counsel.  (ECF. No. 12).  The firm also filed the Debtor's Schedules, Statement of Financial Affairs and other documents required of a Chapter 13 debtor.  (ECF Nos. 13, 14, 15).  The Debtor's schedules listed Fay Servicing LLC ("Fay") as holding a $381,916.48 claim secured by the Investment Property and Rushmore Loan Management Services, LLC ("Rushmore") as holding a $731,042.20 claim secured by the Residential Property.  (Sched. D, ECF No. 13).

3

Also, on November 21, 2019, the Debtor's counsel filed a request to enter the Court's Loss Mitigation Program respecting the mortgage loan on the Residential Property.  (ECF No.18).

On December 30, 2020, the Debtor's counsel moved to withdraw.  (ECF No. 71). Counsel reported that the law firm and the Debtor disagreed on the direction of the bankruptcy case, the Debtor believed counsel had conspired with Rushmore to represent her in bad faith, and she was refusing to communicate with counsel.  (*See* Affirmation of Attorney David Aronow, ECF No. 71, ¶ 32).  On February 3, 2021, the Court entered an order granting Debtor's counsel's request to be relieved as counsel.  (ECF No. 92).

On March 1, 2021, the Debtor filed a motion to recuse the Judge assigned to the case. (ECF No. 103).  On that same date, the Debtor filed a Notice of Voluntary Conversion resulting in the immediate conversion of the case from Chapter 13 to Chapter 7.  (ECF No. 106).

On March 2, 2021, Alan Nisselson was appointed as interim Chapter 7 trustee.  Mr. Nisselson has since qualified as permanent trustee. (ECF No. 108).

On May 14, 2021, Judge Elizabeth S. Stong entered an order recusing herself (ECF No. 146) and this bankruptcy case was reassigned to the undersigned.  (ECF No. 148).

On May 17, 2021, the Chapter 7 Trustee filed a notice of discovery of assets, and the Clerk of the Court set August 16, 2021 as the deadline to file Proofs of Claim.  (ECF No. 145).

**The Adversary Proceeding**

On January 29, 2021, the Debtor commenced an adversary proceeding, captioned *Ashmeen Modikhan v. Darren Aronow, Esq., Hanin Shadood, Esq., Courtney R. Williams, Esq., Fay Servicing, LLC, Rushmore Loan Management Services, Inc., and Marianne DeRosa,*

*Chapter 13 Trustee*, Adv. Pro. No. 21-01009 ("Adversary Proceeding").[3]  The amended complaint in the Adversary Proceeding asserts causes of action for fraud, misrepresentation, wire fraud, and replevin and seeks a temporary restraining order and $86,500.00, representing the amounts expended by the Debtor in this bankruptcy case.  (Adv. Pro. No. 21-01009, ECF No. 77).  In short, the Debtor complains the defendants are involved in a mortgage modification scheme.  Each defendant that has been served with the amended complaint has moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Adv. Pro. No 21-01009, ECF Nos. 7, 8, 12, 15, 20, 21).  Those motions are *sub judice*.

**The Investment Prop. Proof of Claim**

On January 8, 2020, Gross Polowy in its capacity as "attorney for creditor" filed the Investment Prop. Proof of Claim.  The claim identifies Truman as the creditor, requests that notices and payments be sent to Fay, and asserts a $329,809.55 claim for money loaned, secured by a mortgage on the Investment Property.  Attached to Investment Prop. Proof of Claim are copies of the following:

- Mortgage Proof of Claim Attachment (Official Bankruptcy Form, Proof of Claim Attachment A) that itemizes the amount of the claim.

- Promissory Note, dated April 24, 2007 (the "Investment Prop. Note"), in the principal face amount of $179,000 in favor of Countrywide Home Loans, Inc. and executed by the Debtor.  The note is "endorsed in blank."

- Mortgage, dated April 24, 2007, on the Investment Property in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as nominee for Countrywide.

---

[3]      Hanin Shadood was associated with Aranow Law P.C. until she accepted employment with Marianne DeRosa, the Chapter 13 Trustee**.**  Courtney R. Williams is an attorney with Gross Polowy, LLC ("Gross Polowy"), counsel for Fay and Investment Prop. Servicer.  On August 20, 2021, the Debtor filed an amended complaint. (Adv. Pro. No. 21-01009, ECF No. 77) that added defendants Does 1-100 inclusive and the United States of America.

5

- Recording and Endorsement Cover Page reflecting that the mortgage had been recorded on May 31, 2007.

- Assignment of Mortgage, dated October 29, 2009, from MERS, as nominee for Countrywide Home Loans, Inc., to BAC Home Loans Servicing LP F/K/A Countrywide Home Loans Servicing LP, together with a Recording and Endorsement Cover Page indicating that the assignment had been recorded on January 29, 2010.

- Two Assignments of Mortgage, from Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP to Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 3 ("Christiana"), one dated January 28, 2014 and recorded on June 13, 2014, and the other dated May 8, 2014 and recorded on August 1, 2014.

- Assignment of Mortgage from Christiana to U.S. Bank National Association as Legal Title Trustee for Truman, dated June 30, 2017 and recorded on July 28, 2017.

- Escrow Account Disclosure Statement, dated December 9, 2019, on Fay Servicing letterhead.

On June 12, 2020, Gross Polowy filed a notice of "Transfer of Claim Other Than For Security" disclosing that loan servicing had been transferred from Fay to Rushmore (Rushmore, in its capacity as servicer for Truman is hereinafter referred to as "Investment Prop. Servicer"). (ECF No. 54).

**The Residential Prop. Proof of Claim**

On January 9, 2020, Gross Polowy in its capacity as "attorney for secured creditor" filed the Residential Prop. Proof of Claim. The claim identifies the creditor as Tiki, requests that notices and payments be sent to Rushmore in its capacity as servicer for Tiki (Rushmore, in its capacity as servicer for Tiki and its successors in interest is referred to herein as the "Residential Prop. Servicer") and asserts a $689,154.49 claim for money loaned, secured by a mortgage on the Residential Property. Attached to the Residential Prop. Proof of Claim are copies of the following:

- Mortgage Proof of Claim Attachment (Official Bankruptcy Form, Proof of Claim Attachment A) that itemizes the amount of the claim.

- Promissory Note, dated November 21, 2005 (the "Residential Prop. Note"), in the principal face amount of $400,000 in favor of America's Wholesale Lender and executed by the Debtor.  The note is "endorsed in blank" by David A. Spector, Managing Director of Countrywide Home Loans, Inc., a New York Corporation D/B/A America's Wholesale Lender.

- Mortgage, dated November 21, 2005, on the Residential Property in favor of MERS, acting solely as nominee for America's Wholesale Lender.

- Recording and Endorsement Cover Page reflecting the mortgage had been recorded on March 14, 2006.

- Assignment of Mortgage, dated December 12, 2011, from MERS, as nominee for America's Wholesale Lender to Bank of America, N.A. Successor by Merger to BAC Home Loans Servicing LP, F/K/A Countrywide Home Loans Service LP, together with a Recording and Endorsement Cover Page, indicating the assignment had been recorded on February 13, 2012.

- Assignment of Mortgage, dated October 9, 2017, from Bank of America, N.A., as Successor by Merger to BAC Home Loans Servicing LP, F/K/A Countrywide Home Loans Servicing LP to MERS, as nominee for America's Wholesale Lender, its successors and assigns, together with a Recording and Endorsement Cover Page, indicating the assignment had been recorded on February 2, 2018.

- Assignment of Mortgage, dated May 13, 2013, from Bank of America, N.A. to Nationstar Mortgage, LLC.

- Assignment of Mortgage, dated January 20, 2017, from Nationstar Mortgage LLC to MTGLQ Investors, L.P.

- Annual Escrow Account Disclosure Statement, as of November 6, 2019, on Rushmore letterhead.

On March 11, 2021, counsel for Residential Prop. Servicer filed a "Transfer of Claim Other Than For Security" disclosing that Tiki transferred the Residential Prop. Proof of Claim to Dwelling (the "Dwelling Notice of Transfer").  (ECF No. 113).  Residential Prop. Servicer also filed copies of the mortgage assignments from Tiki to Dwelling and MGTLQ Mortgage Investors, L.P. to Tiki.  (ECF Nos. 114, 115).

**The Lift-Stay Motion**

On January 27, 2020, Fay, as servicing agent for Truman, filed the Lift-Stay Motion to terminate the automatic stay as to the Investment Property for cause under Bankruptcy Code section §362(d)(1) based on the Debtor's failure to remit two post-petition mortgage payments. (Lift-Stay Motion ¶¶ 4, 7). On March 9, 2020, the Debtor's then-counsel, informed the Court that the Debtor had applied to the creditor for mortgage assistance. (ECF No. 51). An initial hearing on the Lift-Stay Motion was held on March 10, 2020 and adjourned from time to time.

By letter filed on October 12, 2020, Debtor's then-counsel notified the Court of the Debtor's and the loan servicer's efforts to consensually modify the mortgage. (ECF No. 63). Approximately one month later, on November 13, 2020, the Debtor's counsel filed another letter stating the Debtor had been denied a modification due to her lack of compliance in providing necessary documents, and the Debtor could not oppose the Lift-Stay Motion. (ECF No. 70).

On February 12, 2021, after Debtor's counsel filed the motion to be relieved as counsel for the Debtor, the Debtor filed her objection to the Lift-Stay Motion (the "Objection"). (ECF No. 89). Although the Debtor admitted she is not making post-petition payments, she contends the Lift-Stay Motion should be denied and the Investment Prop. Proof of Claim disallowed for the following reasons:

- The debt owed to Truman was discharged in the Debtor's First Bankruptcy Case. (*Id*. at 3).

- The Investment Prop. Proof of Claim is defective because it does not include Official Bankruptcy Forms 410s1 or s2 and was not timely filed. (*Id*. at 3, 4).

- Truman is not entitled to payment because Truman has not evidenced it owns the underlying Investment Prop. Note. (*Id*. at 5). Debtor contends the Court should not rely on the declaration attached to the proof of claim that purports to authenticate the note, mortgage and other attachments because the declaration is, among other things, self-serving and unreliable. (*Id*. at 6-7). The Debtor claims the copy of the note attached to the claim is not a copy of the original note. (*Id*.).

8

- The note and mortgage were not properly assigned to Truman and neither Truman nor Fay has standing to enforce the mortgage or note or has a beneficial interest in the mortgage or note. (*Id*. at 7-12). In this connection, Debtor claims the endorsement on the note is ineffective because it appears to be a stamped signature instead of a live signature, the signatory is a "well-known unauthorized person" and "robo-signor," and there is "no evidence the signatory had personal knowledge or authority to endorse the note." (*Id*. at 7).

- Debtor further claims the redactions in the mortgage assignments and cover sheets are indicative of an attempt by the creditor to conceal something. (*Id*. at 8-10). The Debtor also claims other aspects of the mortgage assignments render them ineffective. (*Id*.).

On March 1, 2021, Investment Prop. Servicer replied to the Objection ("Reply"). (ECF. No. 104). Investment Prop. Servicer contends the Investment Prop. Proof of Claim was executed and filed in accordance with the Bankruptcy Rules. (*Id*. at ¶¶ 11, 12). Therefore, under Bankruptcy Rule 3001(g), the proof of claim is *prima facie* evidence of the validity and amount of its claim and the Debtor has not produced any evidence to rebut the presumption. (*Id*. at ¶¶ 11, 12, 15).

Investment Prop. Servicer also argues that any purported deficiencies in the mortgage assignments or note assignments are irrelevant. Under applicable law, an assignee with possession of the note and mortgage has standing to file a proof of claim and Truman has possession of the Investment Prop. Note. (*Id*. at ¶¶ 5-9). Lastly, Investment Prop. Servicer argues it is entitled to relief from the automatic stay under Bankruptcy Code section 362(d)(1) because the Debtor failed to make mortgage payments for each of the months of November 1, 2019 through and including February 1, 2021. (*Id*. at ¶ 17).

On April 6, 2021, the Debtor filed a statement reiterating many of the contentions set forth in the Objection. (ECF No. 126). The Debtor also contends both Proofs of Claim are fraudulent because Fay and the Investment Prop. Servicer describe themselves as "creditors." (*Id*. at ¶ 1). She claims they are not creditors because there is no privity of contract between the

Debtor, on the one hand, and Fay or the Investment Prop. Servicer on the other hand. (*Id*.) The Debtor also claims Fay and the Investment Prop. Servicer are not creditors because they are "bulk debt buyer"' or "debt collectors" as opposed to creditors. (*Id*.).

**Debtor's Objection to the Residential Prop. Proof of Claim**

On February 12, 2021, the Debtor filed the Residential Property Claim Objection (ECF No. 90) requesting the claim be disallowed in full and expunged for reasons similar to those stated in the Investment Property Claim Objection. The Debtor's specific objections are summarized as follows:

- The claims against her were discharged in a prior bankruptcy case. (*Id*. at ¶ 2).

- The creditor failed to prove ownership of the Residential Prop. Note. (*Id*. at ¶ 30).

- There is no privity between the Debtor and Tiki or its agents. (*Id*. at ¶ 5).

- The lender on the Residential Prop. Note is America's Wholesale Lender, but that entity was incorporated in New York in 2008, years after the date of the Residential Property note and mortgage. (*Id*. at ¶ 15). In a related argument, the Debtor contends there are several Countrywide entities, including Countrywide Financial Corporation, incorporated in Delaware. (*Id*. at ¶ 11). She contends the current holder of the Residential Prop. Note cannot prove that the mortgage assignments upon which it relies to establish its standing, emanate from the correct Countrywide entity. (*Id*. at ¶¶ 20-33).

- Fannie Mae is the investor in the mortgage, not Dwelling or its predecessors. (*Id*. at ¶ 6).

- Tiki and the Residential Prop. Servicer committed fraud by filing the Residential Prop. Proof of Claim because they are not creditors. Residential Servicer and its counsel are criminally liable for filing a false claim under 18 U.S.C. 154(4). (*Id*. at ¶¶ 3, 4, 31, 32).

- The mortgage assignments are defective and fraudulent for various other reasons. For example, Residential Prop. Servicer's address on the Notice of Transfer is also an address for Balbec Capital, LP. (*Id*. at ¶ 33).

- The endorsement of the Residential Prop. Note is ineffective. David A. Spector, who endorsed the note was employed by Countrywide Financial Corporation and not Countrywide Home Loans, Inc. or America's Wholesale Lender and lacked

authority to endorse the note, and his signature is a stamped signature instead of a "wet ink" original.  (*Id*. at ¶¶ 18-30).

- Residential Prop. Servicer's counsel has not provided proof that she is retained by Tiki.  (*Id*. at ¶ 33).

In addition to seeking disallowance of the proof of claim, the Debtor is seeking an award of $10,000 in costs.

On May 7, 2021, Residential Prop. Servicer, filed its opposition (ECF No. 140) to the Residential Prop. Claim Objection, contending:

- Residential Prop. Proof of Claim contains all necessary disclosures respecting interest, fees, and expenses and attaches all necessary and relevant documents, and no other documents, such as affidavits or declarations, are required.  (*Id*. at ¶¶ 49, 91).  The claim is *prima facie* valid, and the Debtor has produced no evidence to overcome the presumption.  (*Id*. at ¶ 99).

- The Debtor's objections to the mortgage assignments are easily explained and irrelevant.  Residential Prop. Servicer admits it shares an address with Balbec, but no fraud or wrongdoing can be deduced from that fact.  (*Id*. at ¶ 88).  The redactions are not attempts to conceal but attempts to comply with Fed. R. Bankr. P. 9037, which mandates redactions of personally identifiable information.  (*Id*. at 85).

- Residential Prop. Servicer has standing.  Under New York law, a creditor has standing to assert a mortgage claim by demonstrating that it has physical possession of the note endorsed over to the creditor.  (*Id*. at ¶ 54, 66).  At all relevant times, Residential Prop. Servicer had possession of the Residential Prop. Note.  (*Id*. at ¶ 61).  After Tiki's assignment of the note to Dwelling, Residential Prop. Servicer shipped the original note to its counsel, and the note is available for inspection.  (*Id*. at ¶ 64).

- The Debtor does not have standing to challenge alleged defects in the mortgage assignments, negotiation of the promissory note, or mortgagee's authority to foreclose, provided mortgagee owns and possesses the promissory note.  (*Id*. at ¶¶ 58-59).

- On May 20, 2019, a Judgment of Foreclosure and Sale ("Residential Prop. JFS") was entered in favor of Nationstar Mortgage, LLC, Dwelling's predecessor in interest.[4]  (*Id*. at ¶ 23).  The *Rooker-Feldman* Doctrine precludes the Debtor from

---

[4]      The Residential Prop. JFS was entered in *Nationstar Mortgage LLC v. Ashmeen Modikhan, et al.*, Index No. 2005/2012, New York Supreme Court, Queens County.  (Exhibit D, ECF No. 140).

litigating issues that were necessarily resolved by entry of the Residential Prop. JFS, including alleged defects to the endorsement of the original note, or the standing of Nationstar Mortgage LLC or its predecessors-in-interest. (*Id*. at ¶¶ 72, 76).

- The discharge entered in the First Bankruptcy Case discharged only the Debtor's personal liability on the loan and did not discharge the mortgage lien on the Residential Property. (*Id*. at ¶ 80). Filing the Residential Prop. Proof of Claim, while this case was in Chapter 13, was proper and should not be construed as an attempt to collect from the Debtor personally. (*Id*.).

- Debtor's allegations that the Residential Prop. Proof of Claim was fraudulent, forged or altered or that Rushmore, or its counsel engaged in wrongdoing are specious. (*Id*. at ¶ 82).

- Debtor's argument that the claim is not enforceable due to lack of privity is unavailing because the mortgage expressly provides that the Debtor consents to the assignability of the note and mortgage, and as such, the Debtor consented to enforcement of the note and mortgage by future assignees. (*Id*. at ¶ 83).

- The Debtor is not entitled to an award of costs because there has not been any sanctionable conduct. (*Id*. at ¶ 81.).

- Fannie Mae was a prior investor but is no longer the investor on this mortgage. (*Id*. at ¶ 84).

- There is no false claim, fraud or criminality here warranting sanctions or criminal prosecution. (*Id*. at ¶ 86). Further, as Debtor is a civil litigant, she does not have standing to prosecute a criminal action. (*Id*.).

- There is no requirement for counsel to provide proof that it is retained by its client. (*Id*. at ¶ 89).

Residential Prop. Servicer's objection also addresses additional arguments made by the Debtor in the Motion for relief from stay and other pleadings filed by the Debtor.

**The Claim Transfer Objection**

On April 13, 2021, the Debtor filed the Claim Transfer Objection, which seeks an order striking the exhibits to the Notice of Transfer. (ECF No.128). The Debtor contends the exhibits must be stricken because they are fraudulent, the transfer is an improper attempt to cure defects in the Residential Prop. Proof of Claim, and the Notice of Transfer – filed fourteen months after

the bar date – is an attempt to file a claim after the bar date.  (*Id.* at 2).  On April 16, 2021, Residential Prop. Servicer filed a notice of rejection of the Claim Transfer Objection asserting that the deadline to object to the Notice of Transfer had expired.  (ECF No. 130).  Also, Residential Prop. Servicer asserts the Claim Transfer Objection must be denied because there are no defects in the proof of claim that require a cure and there is no requirement that a claim transfer be filed by the bar date. (ECF No. 140, ¶ 94).

**<u>Additional Briefing and Proceedings on the Lift-Stay Motion and Claim Objections</u>**

On July 29, 2021, the Court held a hearing on the Lift-Stay Motion, Claims Objections, and Claim Transfer Objection.  The Court suggested that production of the original "wet ink" notes for inspection could obviate issues as to standing because, under New York law, a secured creditor has standing to enforce a mortgage if it has possession of the promissory note endorsed in blank.  (July 29, 2021, Hr'g Tr. 60: 17 – 62: 3; ECF No. 189).  Residential Prop. Servicer agreed to produce the Residential Prop. Note for inspection. Investment Prop. Servicer's counsel objected to production of the Investment Prop. Note, advised the Court, for the first time, that a pre-petition date judgment of foreclosure and sale had been entered against the Debtor in favor of Truman, and argued the "*Rooker-Feldman* doctrine" barred this Court from reviewing the judgment or Truman's standing to file the Investment Prop. Proof of Claim or the Lift-Stay Motion. *Id.* at 63:6 – 11.

The Court directed the Investment Prop. Servicer to file a copy of the judgment on the docket and to produce the original Investment Prop. Note for inspection by the Debtor.  The Court entered an order directing the parties to confer regarding scheduling for the Debtor's inspection of the notes.  (ECF No. 200).

On August 3, 2021, Investment Prop. Servicer filed a letter reiterating its objection to producing the original Investment Prop. Note. (ECF No. 192). Attached to the letter is a copy of the Order Confirming Referee Report and Judgment of Foreclosure and Sale (the "Investment Prop. JFS" and together with the Residential Prop. JFS, the "Judgments").[5] (*Id.*)

On August 16, 2021, the Debtor filed an 819-page document that includes a purported "forensic analysis of the recorded chains of title and ownership of encumbrances" for the Investment Property prepared for the Debtor by a Florida paralegal. (ECF No. 205). The 39-page "report" includes summaries of recorded documents and investigations (including Facebook profile searches) of parties who signed the mortgage assignments and concludes that further investigation into the mortgage assignments is required. The report recommends the Debtor "seek legal counsel regarding legal malpractice in both foreclosures and her bankruptcies and the expertise of credible securities forensic information regarding her loan." (*Id.* at 38). On August 18, 2021, the Debtor filed a similar 737-page document that includes a 43-page report by the same Florida paralegal regarding the Residential Property mortgage assignments with the same conclusion and recommendation. (ECF No. 207, at 40).

On August 19, 2021, the Debtor filed another objection to the Proofs of Claim. (ECF No. 208). The second objection is aimed primarily at the attorneys representing Rushmore.[6] The Debtor claims there must be wrongdoing because one of Rushmore's attorneys was previously

---

[5]     The Investment Prop. JFS was entered on default in *US National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust v. Ashmeen Modikhan*, Index No. 301/2010, New York Supreme Court, Queens County. (Exhibit A, ECF No. 192).

[6]     ECF. Nos. 209, 210, and 211 are styled as supplementing the Debtor's objections to Claims 5-1, 6-1 and 7-1. The pleadings regard her claims against her former attorney asserted in the Adversary Proceeding. The exhibits are documents previously filed in this bankruptcy case, a prior bankruptcy case, the foreclosure actions, and correspondence from her prior bankruptcy attorney.

employed by the law firm that prosecuted the Investment Property foreclosure action.  (*Id*. at 2)
Also, the Debtor complains that Rushmore employs two law firms – one firm to represent it as
Residential Prop. Servicer and another as Investment Prop. Servicer – and several different
attorneys from that firm have appeared for Rushmore.  (*Id*. at 2-4).

On August 19, 2021, the Court conducted a teleconference respecting the Investment
Prop. Servicer's objection to producing the Investment Prop. Note. and ordered the Investment
Prop. Servicer to produce the note in Court on September 1, 2021.  (ECF No. 212).

On August 27, 2021, Residential Prop. Servicer responded to the Debtor's allegations
asserted in her pleadings filed August 18, 2021 and August 19, 2021. (ECF No. 214).
Rushmore's response addresses each of the purported defects raised in the "forensic report" and
the additional objections raised by the Debtor.  That same date, Investment Prop. Servicer filed an
Affirmation in further support of the Lift-Stay Motion.  (ECF No. 215).  The Affirmation expands
on the Investment Prop. Servicer's argument that the "*Rooker-Feldman* doctrine" bars this Court
from reviewing the Investment Prop. JFS and *res judicata* precludes the Debtor from relitigating
issues that were or could have been raised in the foreclosure action.  (*Id*. at ¶¶ 14 – 18).  Lastly,
the Affirmation contends the Debtor's argument that Truman did not file a proof of claim are
meritless.  (*Id*. at ¶ 19).

On August 30, 2021, the Debtor filed a motion to strike the Investment Prop. Servicer's
affirmation.  (ECF. No. 221).  This pleading contends, in essence, that the Investment Prop.
Servicer is violating a Court order by failing to timely produce the wet ink Investment Prop. Note.
(*Id*. at 3).  The Debtor also appears to argue that the documents attached to the Investment Prop.
Proof of Claim cannot be admitted into evidence because Truman cannot produce a competent
witness to lay the foundation for the documents.  (*Id*. at 2).  The Debtor also complains the

Investment Prop. JFS is not enforceable because it is signed by the court clerk, not a judge, and lacks an official seal. (*Id*. at 3). Lastly, the Debtor alleges counsel for the servicers and her former counsel are engaged in a mortgage modification scam and the Court is ignoring her request for an accounting. (*Id*. at 3-4).

On August 30, 2021, the Debtor also filed a motion to strike Residential Prop. Servicer's August 27, 2021 supplemental response reiterating many arguments raised in the Debtor's prior pleadings. (ECF No. 222). The next day, the Debtor filed copies of a consent order entered in an administrative proceeding before the Department of Financial Protection and Innovation of the State of California in December of 2020. (ECF No. 224). The consent order addresses Rushmore's violation of California regulations, including overcharges of per diem interest but does not implicate the Debtor's mortgage. (*Id*.). On September 2, 2021, the Debtor filed a consent order entered in an administrative proceeding before the United States Consumer Financial Protection Bureau. (ECF No. 226). The consent order addresses Fay's violation of the Real Estate Settlement Procedures Act, 12 U.S.C. 2601, *et seq*., and its implementing regulations, including violations designed to protect defendants in residential foreclosures seeking loss mitigation. (*Id*.) The Debtor, however, does not allege that she is an "Affected Consumer" impacted by the consent order. (*Id*.)

On September 1, 2021, the Debtor filed another pleading reiterating her arguments that the Proofs of Claim must be disallowed, and the Lift-Stay Motion denied because neither of the Proofs of Claim conform to Official Bankruptcy forms 410, 410A, 410s1 and 410s2. (ECF No. 225). The Debtor also contends the Proofs of Claim are in Rushmore's name, but Rushmore is

not one of the Secured Creditors and the Secured Creditors are time barred from filing proofs of claim.  (*Id*. at 3-4).[7]

On September 1, 2021, the Court conducted a hearing attended by the Debtor and her son, Investment Prop. Servicer's counsel, and Residential Prop. Servicer's counsel, at which they produced the original Investment Prop. Note and Residential Prop. Note.[8]  The notes were examined by the Debtor and the Court. (September 1, 2021, Hr'g Tr. 4:3 – 15:14, ECF No. 231).[9]

On September 8, 2021, the Debtor filed a pleading captioned, "Debtor's Notice and Objection to Defiance of a Court Order."  (ECF No. 236).  The Debtor claims the notes produced at the September 1, 2021 hearing were not originals but phony, electronically generated copies.  (*Id*. at 2).  The Debtor includes a long list of reasons supporting her contention, including that: there were no armed guards, accompanying collateral files, or evidence of chain of title; each note had one undated, blank endorsement; the endorsements were signed by people known for fraudulent endorsements; and the Debtor's signature was not witnessed.  (*Id*. at 2-4).

On September 10, 2021, the Debtor filed a pleading in further opposition to the Lift-Stay Motion and in further support of the Claim Objections (ECF No. 239) restating arguments from her prior pleadings, such as:  the Investment Prop. Proof of Claim fails to comply with the

---

[7]      Attached to the document is a "Consent Order and Settlement Agreement resolving an action captioned In the Matter of Aranow Law Corp. D/B/A Aranow Law, P.C. D/B/A Anorow Law, PC and Darren Aronow, Case No.: CFR FY2017-0003, that came before the Office of the Commissioner of Financial Regulation.  Although Aronow Law P.C. is the Debtor's former counsel, the Debtor does not contend she was a party to this action and does not inform the court of the connection between the consent order to her claims against Truman.

[8]      Residential Prop. Servicer was not directed to appear and produce their note but did so voluntarily.

[9]      Considering all parties' practice of filing letters and pleadings and emailing chambers in connection with the Lift-Stay Motion and the Claim Objections (often just prior to a hearing), the Court set deadlines for filing additional pleadings in connection with those three matters.  (*See* September 1, 2021, Hr'g Tr.  25:7 – 27:12, ECF No. 231 and ECF No. 235).

Bankruptcy Rules and is defective; Fay is not the "real party in interest" and does not have standing to enforce the Investment Prop. Proof of Claim against the Debtor; the mortgage assignments are defective and misleading; the transfer of the servicing arrangement from Fay to the Investment Prop. Servicer was improper; counsel for Fay and Rushmore are involved in a fraud or scheme; the Investment Prop. JFS is unenforceable because it is signed by a clerk, and lacks a judicial seal; and the Investment Prop. Note produced in Court is not an original note. (*Id.*)

The next day, the Debtor supplemented her Residential Property Claim Objection.  (ECF No. 240).  The supplement reiterates objections she made in prior pleadings, including that the mortgage assignments are invalid due to vagueness surrounding the various Countrywide entities and defects in the Residential Prop. Note endorsement, and the Residential Prop. Proof of Claim was not filed timely.  Also, the Debtor asserts that: Dwelling's claim is based on a derivative contract not a mortgage, therefore it is an unsecured claim; the Residential Prop. Proof of Claim is fraudulent because it does not disclose that Dwelling acquired the claim from someone else; there must be fraud because Dwelling has the same address as Balbec Capital, LP (an entity that allegedly purchased mortgages) and Balbec Capital, LP is a "hidden party of interest"; and the attorneys, including her own attorneys, are involved in a mortgage modification scheme.  She also claims Rushmore received double payments because the Debtor made payments for Rushmore's[10] benefit through the Chapter 13 plan (on account of pre-Petition Date defaults) and as trial payments on a loan modification (on account of post-Petition Date mortgage payments).  (*Id.* at 2-9).  The supplement also contends post-petition assignments of the mortgage violated the

---

[10]    The Debtor does not distinguish between Rushmore in its capacities as Residential Prop. Servicer and Investment Prop. Servicer.

automatic stay. (*Id.* at 9). The supplement seeks a full refund of the trial modification payments. (*Id.* at 10.).

On September 22, 2021, Investment Prop. Servicer filed its response (ECF No. 243) to the "Debtor's Notice and Objection to Defiance of a Court Order" (ECF No. 236), which accused the Investment Prop. Servicer of failing to produce the original wet ink note. The Investment Prop. Servicer denies that the note produced in Court was not an original note. (ECF No. 243, ¶ 6). Also, the Investment Prop. Servicer repeats its *res judicata* and *Rooker-Feldman* doctrine arguments. (*Id.* at ¶ 7).

On September 29, 2021, Investment Prop. Servicer filed a supplemental response to the Debtor's objection to the Investment Prop. Proof of Claim and Lift-Stay Motion that collects and distills its responses to the Debtor's many arguments. (ECF No. 247). In the response, Investment Prop. Servicer contends the Debtor's objections to the Proofs of Claim are irrelevant because a secured creditor in a Chapter 7 case is not required to file a proof of claim and the Debtor's objections are barred by the *Rooker-Feldman* doctrine, *res judicata* and in essence, mooted by the production of the wet ink note. (*Id.* at ¶¶ 6-7). The Investment Prop. Servicer also contends the Debtor does not have standing to object to the mortgage assignments because she is not in privity of contract with the parties to the mortgage assignment. (*Id.* at ¶ 9). Lastly, the Investment Prop. Servicer asserts there is cause for relief from the automatic stay based on the Debtor's admitted failure to make post-petition payments. (*Id.* at ¶ 10).

On September 24, 2021, Residential Prop. Servicer filed a supplement. (ECF No. 248). Its responses to the Debtor's new objections are summarized as follows:

- Residential Prop. Servicer's debt is not unsecured. Its claim is secured by a mortgage on the Residential Property. (*Id.* at ¶ 9).

- The stamped endorsement on the Residential Prop. Note is effective.  Under section 3-202 of the New York Uniform Commercial Code, there is no requirement for a signature to be a wet ink signature.  Further, under section 3-207 of the New York Uniform Commercial Code, the Debtor lacks standing to challenge the negotiation of the note, as she is not a subsequent "holder in due course."  (*Id.*)

- The Residential Prop. Note produced on September 1, 2021 was the original note and not a photocopy. (*Id.*)

- The sale of mortgage loans and recordation of assignments of mortgage does not violate the automatic stay. Fed. R. Bankr. P. 3001(e) expressly permits the transfer of claims during a bankruptcy case.  (*Id.*)

- Residential Prop. Servicer denies all allegations that it engaged in a scheme to propagate a loan modification scam upon the Debtor, or that it should disgorge trial loan modification payments previously made by the Debtor. (*Id*. at 12).

On September 29, 2021, the Debtor filed a "sur-reply" in further support of her Residential Prop. Claim Objection that reiterates her prior arguments and amplifies her allegations of fraud.  (ECF No. 251).

**The Filing Injunction**

On September 3, 2021, Residential Prop. Servicer moved for entry of an order that would require the Debtor to seek leave of Court prior to: (i) filing any motion, discovery request, pleading, complaint, or action challenging Residential Prop. Servicer's standing, lien on the Residential Property, or right to retain mortgage payments in this case or the Adversary Proceeding; and (ii) filing any subsequent bankruptcy cases or adversary proceedings.  (ECF No. 232).  The basis of the motion is that the Debtor's numerous and voluminous pleadings require a response from the Residential Prop. Servicer, notwithstanding that the pleadings are duplicative and, in its view, vexatious and meritless.  (*Id.*)

The Debtor filed a lengthy response (ECF No. 242) that reiterates objections raised in prior pleadings, including: (i) Residential Prop. Servicer has not filed a proof of claim and is time

barred from doing so (*Id.* at ¶¶ 2-4); (ii) Residential Prop. Proof of Claim is defective (*Id.* at ¶ 4); (iii) Residential Prop. Servicer and its counsel committed fraud by executing and filing its proof of claim (*Id.* at ¶ 10); (iv) there are numerous other defects in the mortgage assignments (*Id.* at ¶¶ 15-17); and (v) the Notice of Transfer was defective and violated the automatic stay (*Id.* at ¶ 9). The Debtor adds that the request for the filing injunction was a surprise and an angry emotional response to the outcome of the September 1, 2021 hearing. (*Id.* at ¶ 8). The Debtor also claims Residential Prop. Servicer violated state law by failing to provide an accounting. (*Id.* at ¶¶ 1, 4).

Residential Prop. Servicer's reply (ECF No. 249) reiterates its prior responses to the Debtor's objections (*Id.* at ¶¶ 5, 6, 16) and adds that the Debtor's objections to standing are obviated by Residential Prop. Servicer's production of the original Residential Prop. Note. (*Id.* at ¶ 7). Residential Prop. Servicer disputes Debtor's characterization of the pleading as a surprise noting that in accordance with Fed. R. Bankr. P. 9011(c)(1)(A), a draft of the motion together with a request to withdraw the Debtor's frivolous pleadings was served on the Debtor on August 9, 2021. (*Id.* at ¶ 12). Notwithstanding the warning, the Debtor filed additional pleadings raising the same objections to standing. (*Id.* at ¶¶ 13, 14). Residential Prop. Servicer also contends the Debtor's filings are causing it to incur legal fees that are unlikely to be recouped and a waste of judicial resources. (*Id.* at ¶¶ 10, 11). Additionally, the Debtor is not entitled to an accounting at this juncture as the Court denied the Debtor's request for an accounting until the Court ruled on the motions to dismiss.[11]

---

[11]     At the July 29, 2021 pre-trial conference on the Adversary Proceeding, the Court advised the Debtor's request for an accounting would be considered if her complaint survived the motions to dismiss but granted the Debtor an opportunity to amend her complaint. (July 29, 2021 Hr'g Tr. 13:20-24, ECF No. 189.) At the September 1, 2021 hearing, the Court noted that a list of all charges and payments was included in the attachment to the Residential Prop. Proof of Claim. Based on the attachment, the Debtor could object to the amount of the Claim if she believed her payments were not reflected in the attachment or if she believed the math was incorrect. (Sept. 1, 2021, Hr'g Tr. 16:24 -17:8, ECF No. 231). Further, as set forth below, due to the discharge in the First Bankruptcy Case, no distribution will be made on account of the claim in any event.

The Debtor filed a "rejoinder" on September 29, 2021.  (ECF No. 250).  In summary, the Debtor contends the motion for filing injunction is an attempt to silence and bully the *pro se* Debtor and to prevent her from presenting her evidence and arguments.  Further, the servicers and the attorneys that represent them are plagued with instances of fraud and malpractice.  (*Id*. at ¶ 6).

After a September 30, 2021 hearing, the Court granted the motion only in part. Specifically, the Court directed that the Debtor may not file or serve motions, requests or pleadings or commence adversary proceedings in this case that challenge the Residential Prop. Servicer's standing, the validity of its lien or its proof of claim, or its rights to retain mortgage payments without prior Court approval; provided, however, the restrictions would remain in place only until the Court ruled on the Claims Objections, the Lift-Stay Motion and the motions to dismiss in the Adversary Proceeding.  The Court did not rule on the Residential Prop. Servicer's request to enjoin the Debtor from commencing other bankruptcy cases but provided for the Residential Prop. Servicer to schedule a hearing to consider the remaining relief after the Court ruled on all of the contested matters.  (ECF No. 258).

DISCUSSION

I.  <u>The Claim Objections and the Debtor's Objection to the Lift-Stay Motion Are Not Wholly Barred by *Rooker-Feldman*, *Res Judicata*, or Collateral Estoppel</u>

The Claim Objections and the Debtor's objection to the Lift-Stay Motion are rooted, in large part, in the Debtor's contentions that neither the Secured Creditors nor their servicers have standing to file the Proofs of Claim or to seek relief from the automatic stay.  Investment Prop. Servicer argues this Court lacks subject matter jurisdiction to consider those arguments based on the *Rooker-Feldman* doctrine, and the Debtor is precluded from objecting to standing based on doctrines of *res judicata* and collateral estoppel.  Residential Prop. Servicer raises similar arguments, albeit admitting that *Rooker-Feldman*, *res judicata* and collateral estoppel do not

necessarily preclude this Court's examination of standing based on events occurring after entry

of the Residential Prop. JFS.  Residential Prop. Servicer further contends that the Debtor's

objections to standing must, nonetheless, be overruled because Residential Prop. Servicer has

established standing by producing the original Residential Prop. Note.

As set forth below, *Rooker-Feldman*, *res judicata*, and collateral estoppel preclude this

Court from reviewing the Judgments or issues determined by the state courts in the foreclosure

actions, such as whether the plaintiffs in the foreclosure actions had standing.  However, none of

those principals preclude this Court from hearing and determining the Debtor's objections to

standing in this bankruptcy case.

a.  <u>*Res Judicata* and Collateral Estoppel</u>

"Under the doctrine of res judicata, a disposition on the merits bars litigation between the

same parties, or those in privity with them, of a cause of action arising out of the same

transaction or series of transactions as a cause of action that either was raised or could have been

raised in the prior proceeding."  *Bravo v. Atlas Cap. Grp., LLC*, 196 A.D.3d 627, 628, 152

N.Y.S.3d 134 (N.Y. App. Div. 2nd Dept. 2021) (internal citations and quotation marks omitted).

The related concept of collateral estoppel "bars relitigation of an issue which has necessarily

been decided in that prior action or proceeding and is determinative of the issues disputed in the

present action, provided that there was a full and fair opportunity to contest the decision now

alleged to be controlling."  *Id.* (internal citations omitted).  "The party asserting the conclusive

effect of a prior judgment has the burden to establish it."  *Id.* at 629.

The Judgments are final determinations on the merits of the claims asserted by Truman

and Dwelling's predecessor-in-interest in the state court foreclosure actions.  *Tromba v. E. Fed.*

*Sav. Bank, FSB*, 148 A.D.3d 753, 754, 48 N.Y.S.3d 501 (N.Y. App. Div. 2nd Dept. 2017).  This

is true notwithstanding the Residential Prop. JFS was entered on default. *Id.* ("A judgment of default which has not been vacated is conclusive for res judicata purposes, and encompasses the issues which were raised or could have been raised in the prior action.") (internal citation omitted). The Proofs of Claim and Lift-Stay Motion arise out of the same transactions as the causes of action raised in the state court foreclosure proceedings; namely, the mortgage debts owed to Truman and Dwelling's predecessor in interest and Truman's and Dwelling's predecessor in interest's rights to foreclose their mortgages. Defects in the mortgage assignments, endorsements to the promissory notes, and the foreclosure complaints, and other objections to the Secured Creditors' standing in the foreclosure actions are issues that could have been raised in the foreclosure proceedings and cannot be raised now to challenge the validity of the Judgments.

Some courts have held that a New York state court's judgment should not be given preclusive effect by the federal court if the judgment was procured by collusion or fraud because New York law permits collateral attacks on judgments obtained by extrinsic fraud (*i.e.*, fraud impacting a party's opportunity to have a full and fair hearing) as opposed to intrinsic fraud (*i.e.*, fraud alleged as part of an underlying cause of action or as a defense to the underlying cause of action). *See In re Ward*, 423 B.R. 22, 29 (Bankr. E.D.N.Y. 2010) (holding there is an extrinsic fraud exception but recognizing split in authority). Under the "extrinsic fraud" exception, threats of physical harm, or the misrepresentation that the action would be discontinued affecting the debtor's ability to be heard would be a basis for denying preclusive effect to a state court judgment. *Id.*

The Debtor alleges there was fraud in each foreclosure action based on her analyses of the defects in the chains of mortgage assignments and the two "forensic" reports and her

allegations that the people that executed the mortgage assignments and note endorsements were unauthorized or outright fraudsters.  The Debtor also claims fraud is evidenced by the consent orders between the Commissioner of Financial Protection and Innovation and Rushmore and the Consumer Financial Protection Bureau and Fay.  The Debtor, however, does not allege that either consent order concerns her mortgages or foreclosure actions.  Further, the Debtor has not alleged that the Judgements were procured by threats, promises to discontinue the foreclosure actions, or other methods that would have deprived the Debtor of her opportunity to be heard in either foreclosure action.  Accordingly, to the extent an extrinsic fraud exception to *res judicata* or collateral estoppel exists, the exception would not apply in this case.

Relatedly, the Debtor's contentions that the Judgments are fraudulent or unenforceable because they are not signed by a judge and lack an official seal are unavailing.  New York law provides that judgments be signed by the clerk not the judge.  N.Y. C.P.L.R. § 5016 (McKinney 2021).  Debtor provides no support for the proposition that a judgment must carry an official seal and the Court is not aware of any such requirement.

However, a finding that the Debtor is precluded by *res judicata* and collateral estoppel from challenging the Judgments does not mean Truman, Dwelling or their servicers have standing in this bankruptcy case.  Standing is determined when a party seeks to enforce its rights. Standing at one point in time is not determinative of standing at another point in time.  *See PNMAC Mortg. Co., LLC v. Friedman*, 189 A.D.3d 1289, 1292, 136 N.Y.S.3d 38 (N.Y. App. Div. 2nd Dept. 2020) (dismissal of foreclosure action for lack of standing was not determinative of standing in a second foreclosure action brought by the same plaintiff); *Deutsche Bank Nat'l Trust Co. v. Murray*, 176 A.D.3d 1172, 1175, 111 N.Y.S.3d 330 (N.Y. App. Div. 2nd Dept. 2019) (same).  A determination that Truman and Dwelling's predecessor in interest previously

had standing to enforce their rights in the state court foreclosure actions, does not establish that Truman, Dwelling, or their servicers have standing to file the Proofs of Claim or seek stay relief now in this bankruptcy case.

b. The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine gives effect to the principle that lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction would result in the reversal or modification of a state-court judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998). The doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

*Rooker-Feldman* bars reconsideration of a state court judgment even if the party seeking relief alleges the state court judgment was obtained erroneously, fraudulently, or by a party that lacked standing. *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (federal court could not grant relief from foreclosure judgment despite claims that judgment was obtained fraudulently and plaintiff lacked standing because "[t]his would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error."); *In re Ward*, 423 B.R. at 27-30 (holding that court was barred by *Rooker-Feldman* from reconsidering foreclosure judgment despite allegations that "no original note was produced," "the mortgage was rescinded," "the plaintiff in the action d[id]n't exist or that it was not a proper party to the foreclosure action," "and that 'everything was done irregularly and underneath [the] table'") (emendation in original). The doctrine, however, is not a blanket bar to

a federal court's exercise of jurisdiction over claims stemming from the same facts as claims previously determined by state court.  Lower federal courts do not lose jurisdiction merely because "a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Exxon Mobil Corp.*, 544 U.S. at 293 (internal quotation marks and alterations omitted) (citations omitted).  *See Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005) ("A plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of *Rooker–Feldman*.").

*Rooker-Feldman* applies only under the following conditions: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock*, 422 F.3d at 85.

Here, the first and fourth prongs of *Rooker-Feldman* are met – the Debtor lost in state court in both foreclosure actions and the Judgments were rendered before the Debtor commenced this bankruptcy case.  However, the Debtor's objections to the Proofs of Claim and the Lift-Stay Motion include objections to standing in this case, as distinguished from standing in the foreclosure actions as well as allegations of fraud occurring after entry of the Judgments.  As such, it is inaccurate to say the Claim Objections and objection to the Lift-Stay Motion are requests for this Court to review the Judgments.  For that reason, *Rooker-Feldman* does not deprive this Court of subject matter jurisdiction over the Debtor's objections even if this Court's ruling would deprive the Secured Creditors of their rights to foreclose their respective

mortgages.[12]  *See Miller v. Deutsche Bank Nat'l Trust Co. (In re Miller)*, 666 F.3d 1255, 1261

n.4 (10th Cir. 2012) ("[w]hether a party has standing to seek relief" is distinct from "whether that

party's underlying claim is valid."); *Rushmore Loan Mgmt. Servs., LLC v. Kohar* (*In re Kohar*),

525 B.R. 248, 253 (Bankr. W.D. Pa. 2015) (*Rooker-Feldman* doctrine prevented reexamination

of foreclosure judgment but did not preclude court from determining standing of mortgage

servicer).

    c.   <u>Secured Creditors and their Servicers Have Standing to File Proofs of Claim and Seek Stay Relief in this Case</u>

"To file a proof of claim, a claimant must be a real party in interest, which means that the

claimant is a 'creditor or the creditor's authorized agent.'" *Wells Fargo Bank, N.A. v. Carssow-*

*Franklin* (*In re Carssow-Franklin*), 213 F. Supp. 3d 577, 592 (S.D.N.Y. 2016) (citing *In re*

*Minbatiwalla*, 424 B.R. 104, 108 (Bankr. S.D.N.Y. 2010)).  "The real party in interest with

respect to a mortgage proof of claim is the party entitled to enforce the note and its

accompanying mortgage." *In re Carssow-Franklin*, 213 F. Supp. 3d at 592 (*citing Simmerman v.*

*Ocwen Fin. & Mortg. Servs., Inc (In re Simmerman)*, 463 B.R. 47, 59 (Bankr. S.D. Ohio 2011)).

Under New York law, the holder of the note is the party with standing to enforce the note and the

mortgage. *See In re Richmond*, 534 B.R. 479 (Bankr. E.D.N.Y. 2015), *aff'd sub nom. Richmond*

*v. Select Portfolio Servicing Inc.*, 2016 WL 743397 (E.D.N.Y. Feb. 22, 2016).

Neither Truman nor Dwelling are the original lenders but are assignees of the note and

mortgage.  "For an assignee to establish standing, the assignee must provide proof of assignment

of the note to the assignee or must demonstrate that the note has been endorsed in blank and that

---

[12]    For these reasons, the Court need not undertake an analysis of the second and most important prong of the Rooker-Feldman doctrine, which is whether the Debtor is complaining of an injury caused by the Judgments. *Hoblock*, 422 F.3d at 87.

the assignee has physical possession of the note." *Benyamin v. Benyamin (In re Benyamin)*, 596 B.R. 789, 794 (Bankr. S.D.N.Y. 2019), *aff'd,* 2020 WL 2832815 (S.D.N.Y. June 1, 2020). Written assignment and physical delivery are alternative means of establishing standing, and therefore potential defects in a written assignment will not defeat standing once it is established by physical possession. *U.S. Bank N.A. v. Askew*, 138 A.D.3d 402, 402, 27 N.Y.S.3d 856 (N.Y. App. Div. 1st Dept. 2016) ("A plaintiff may establish standing in a foreclosure action *either* by showing assignment of the mortgage note *or* physical delivery of the note prior to the commencement of the foreclosure action.") (citing *Bank of N.Y. Mellon Trust Co. NA v. Sachar*, 95 A.D.3d 695, 695-696) (N.Y. App. Div. 1st Dept. 2012)) (emphasis added); *see also In re Minbatiwala*, 424 B.R. 104, 109 (Bankr. S.D.N.Y. 2010) (Physical transfer of the note is sufficient; a written assignment is not necessary.) (citing N.Y. Real Prop. Law § 244); *In re Conde–Dedonato*, 391 B.R. 247, 251 (Bankr. E.D.N.Y. 2008) (same); *Deutsche Bank Nat'l Trust Co. v. McRae*, 27 Misc. 3d 247, 249, 894 N.Y.S.2d 720 (Sup. Ct. 2010) (same).  Moreover, a mortgagee generally does not have standing to challenge mortgage assignments.  *Nucci v. PHH Mortg. Corp.*, 679 F. App'x 48, 50 (2d Cir. 2017) (citing *Nucci v. PHH Mortg. Corp.*, 2016 WL 1070815, at *3 (citing cases)).

"To establish standing as a servicer, the claimant must show that it is an authorized agent of an entity that has the right to enforce the note." *In re Benyamin*, 596 B.R. at 794 (citing *Veal v. Am. Home Mortg. Servicing, Inc.* (*In re Veal*), 450 B.R. 897, 920 (B.A.P. 9th Cir. 2011)); *In re Parrish*, 326 B.R. 708, 720 (Bankr. N.D. Ohio 2005)).  Evidence that a servicer is authorized to act on behalf of a creditor includes evidence of physical possession of the note by the servicer. *In re Escobar*, 457 B.R. 229, 241 (Bankr. E.D.N.Y. 2011); *MTGLQ Invs., L.P. v. Vasquez*, 190 A.D.3d 616, 140 N.Y.S.3d 502, 503 (N.Y. App. Div. 1st Dept. 2021); *See also Cent. Mortg. Co.*

*v. Davis*, 149 A.D.3d 898, 899, 53 N.Y.S.3d 325 (N.Y. App. Div. 2nd Dept. 2017) ("a plaintiff

that has possession of the note has standing to foreclose, even where, as here, the plaintiff is the

servicer, not the owner, of the mortgage loan") (citing *Citimortgage, Inc. v. Espinal*, 134 A.D.3d

876, 880, 23 N.Y.S.3d 251 (N.Y. App. Div. 2nd Dept. 2015); *CWCapital Asset Mgt., LLC v.

Great Neck Towers, LLC*, 99 A.D.3d 850, 851, 953 N.Y.S.2d 89 (N.Y. App. Div. 2nd Dept.

2012)).

Residential Prop. Servicer and Investment Prop. Servicer each presented the original wet

ink promissory notes, endorsed in blank, for inspection in open Court.  (Sept. 1, 2021, Hr'g Tr.

13:13– 21:25, ECF No. 231).  Therefore, the servicers have established that they have possession

of the notes and standing to enforce the mortgages on their own behalf and as agents for

Dwelling and Truman.

The Debtor vehemently disputes that the notes produced in Court are the wet ink

originals and alleges they are elaborate electronic copies.  Respecting the Investment Prop. Note,

she claims the note is not an original because there is no noticeable physical impression in the

paper from her signature.  (Sept. 1, 2021, Hr'g Tr. 20:18–25, ECF No. 231).  Regarding the

Residential Prop. Note, she claims the endorsement on the alleged original note is placed

differently than the endorsement on the copy of the note attached to the Residential Prop. Proof

of Claim – one is straight and the other is slightly sideways.  Neither of these allegations is

inconsistent with a finding that the notes produced in open court for inspection are the original

wet ink signatures.  In that regard, the Debtor has not alleged that her signature on the note more

than a decade ago did indeed leave a physical impression on the paper.  Similarly, the difference

in placement of the endorsements may be a result of placement of the paper on a copier machine.

Accordingly, the Debtor's observations, even if true, are not enough to put into doubt that the

servicers possess the original ink promissory notes, especially considering that the notes produced include numerous attributes consistent with original documents.  (*See* Sept. 1, 2021, Hr'g Tr. 13:25– 15:14; 21: 7-24, ECF No. 231).

Because possession of the note, endorsed in blank, is sufficient to establish standing, the Court need not consider the Debtor's contentions regarding the validity of the mortgage assignments.  Further, possession of the note obviates the Debtor's objections based on defects in the note endorsements.  *Cf.  Deutsche Bank Nat'l Tr. Co.*, 176 A.D.3d at 1174 (noting that "[t]here is simply no requirement that an entity in possession of a negotiable instrument that has been endorsed in blank must establish how it came into possession of the instrument in order to be able to enforce it") (citing *JPMorgan Chase Bank, N.A. v. Weinberger*, 142 A.D.3d 643, 645, 37 N.Y.S.3d 286 (N.Y. App. Div. 2nd Dept. 2016)); N.Y. U.C.C. 3-204(2) (McKinney 2021).

Based on the foregoing, although the *Rooker-Feldman* doctrine, *res judicata*, and collateral estoppel do not preclude the Debtor from challenging standing, Truman, Dwelling and their servicers have established standing to file the Proofs of Claim and to seek relief from stay in this case.

II.     The Debtor's Objections to the Proofs of Claim are Overruled

As set forth below, the Claims Objections must be overruled because none of the Debtor's numerous objections to the Proofs of Claim are meritorious.

   a.     The Proofs of Claim are Facially Sufficient

The Debtor contends the Proofs of Claim are defective because, among other things, they do not comply with Bankruptcy forms 410 s1 and s2 and the documents filed in support of the Proofs of Claim are, among other things, self-serving, and unreliable.

Official Bankruptcy Form B-10, the official proof of claim form, instructs creditors filing

proofs of claim to:

> Attach redacted copies of any documents that support the claim, such as
> promissory notes, purchase orders, invoices, itemized statements of running
> accounts, contracts, judgments, mortgages, and security agreements. You may
> also attach a summary. Attach redacted copies of documents providing evidence
> of perfection of a security interest. You may also attach a summary.

*See also* Fed. R. Bankr. P. 3001(c)(1), (d)(1) (A proof of claim asserting a claim or security

interest based on a writing must attach a copy of the writing and evidence that the security

interest has been perfected).

 "[A] proof of claim executed and filed in accordance with [the bankruptcy rules] shall

constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P.

3001(f). The "[f]ailure to attach the documentation required by Bankruptcy Rule 3001 will

result in the loss of the prima facie validity of the claim." *In re Benyamin*, 587 B.R. at 249

(citing cases).

 The Proofs of Claim conform to Official Bankruptcy Form B-10 and each was executed

by each Secured Creditor's respective agent and filed in accordance with the Bankruptcy Rules.

Attached to each proof of claim is a completed "Proof of Claim, Attachment A Mortgage Proof

of Claim Attachment" and a copy of the promissory note, mortgage, proof the mortgage was

recorded, the assignments of the mortgage, and escrow account statement. Therefore, each of the

Proofs of Claim attaches the documentation required by the Bankruptcy Rules. Neither Secured

Creditor attached a copy of its judgment of foreclosure and sale; however, the judgments were

subsequently filed on the docket of the case. *Cf. In re Minbatiwalla*, 424 B.R. 1 at 117

(Creditor need only attach summary of its claim to proof of claim and may supplement the claim

with additional documents).

 The Debtor correctly observes that Forms 410s1 (Notice of Mortgage Payment Change)

and 401s2 (Notice of Postpetition Mortgage Fees, Expenses, and Charges) are not attached to the

Proofs of Claim.  Forms 410s1 and 410s2 must be filed if there are changes to post-petition monthly installment payments, fees, expenses, or charges that the mortgagee asserts are recoverable from the debtor or the real property securing the claim.  Neither form is required to be filed with a proof of claim.

The Debtor correctly observes that the Secured Creditors failed to check the box on the Proofs of Claim that indicates the claim was acquired from someone else.  However, that error is not material and a technical defect in completing a proof of claim is not a basis to disallow a proof of claim.  *See Steed v. Educ. Credit Mgmt. Corp. (In re Steed)*, 614 B.R. 395, 411 (Bankr. N.D. Ga. 2020) (Fed. R. Bankr. P. 3001 "is a procedural rule designed primarily to aid in the efficient resolution of claims" and "not a mechanism to afford debtors an independent cause of action for violations of the Rule and official forms" or "in and of itself, a basis to deny a claim.").

Lastly, the Debtor points to *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020) as binding authority that the Proofs of Claim must be disallowed because they are defective.  *See e.g.,* ECF No. 260.  The Supreme Court in *Ritzen* held that an order denying a creditor's motion for relief from the automatic stay is a final appealable order.  *Id.* at 586.  The decision does not address disallowance of proofs of claim due to technical defects.  Accordingly, the Debtor's reliance on that case is misplaced.

Despite the Debtor's numerous and voluminous pleadings asserting myriad objections, the Proofs of Claim are entitled to the presumption of *prima facie* validity created by Bankruptcy Rule 3001(f) and the Debtor has not come forward with evidence rebutting that presumption. Furthermore, the Debtor included the Secured Creditor's claims on her schedules in the First Bankruptcy Case and this bankruptcy case.  The schedules, which were signed under penalty of

perjury, are admissions that provide some evidence as to the validity of the Proofs of Claim.  *See*

*In re Cluff*, 313 B.R. 323, 339 (Bankr. D. Utah 2004), *aff'd sub nom. Cluff v. eCast Settlement*,

2006 WL 2820005 (D. Utah Sept. 29, 2006).

      b.   <u>The Secured Creditor's *In Rem* Rights Survived the Discharge From the First Bankruptcy Case.</u>

The Debtor contends the Proofs of Claim should be disallowed because the debts were

discharged in the First Bankruptcy Case.  In *Johnson v. Home State Bank*, the United States

Supreme Court addressed the limited impact of a Chapter 7 discharge on creditors holding

secured claims, stating:

> A mortgage is an interest in real property that secures a creditor's right to repayment. But unless the debtor and creditor have provided otherwise, the creditor ordinarily is not limited to foreclosure on the mortgaged property should the debtor default on his obligation; rather, the creditor may in addition sue to establish the debtor's *in personam* liability for any deficiency on the debt and may enforce any judgment against the debtor's assets generally. A defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation. However, such a discharge extinguishes *only* "the personal liability of the debtor." Codifying the rule of *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), the Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy.

*Johnson v. Home State Bank*, 501 U.S. 78, 82–83 (1991) (emphasis in original) (internal citations

omitted).  The Debtor is correct that the discharge from the First Bankruptcy Case extinguished

her personal liability for the debts; however, as set forth above, the Secured Creditors' interests

as mortgagees passed through the First Bankruptcy Case unaffected by the Discharge. [14]

The Supreme Court also held in *Johnson v. Home State Bank* that the mortgage interest

that survives the Chapter 7 discharge is a "claim" as defined in Bankruptcy Code section 101(5).

---

[14]      For these same reasons, the Debtor's objection to the Lift-Stay Motion based on the discharge is overruled.

*Id.* at 84.  Accordingly, each Secured Creditor was entitled to file a proof of claim on account of its mortgage interest.

    c.   <u>The Proofs of Claim are Timely Filed</u>

The Debtor contends the Proofs of Claim must be disallowed because they were not filed timely.  The deadline to file proofs of claim in the Debtor's preceding Chapter 13 case was January 9, 2020.  Truman's Investment Prop. Proof of Claim was filed on January 8, 2020. Dwelling's Residential Prop. Proof of Claim was filed on January 9, 2020.  After conversion of the case to Chapter 7 and the Chapter 7 Trustee's discovery of assets, the deadline to file proofs of claim was reset to August 16, 2021.  There is, however, no requirement to file a new claim upon conversion of a case from Chapter 13 to Chapter 7.  Fed. R. Bankr. P. 1019(3).

Based on the foregoing, the Claim Objections are overruled.  However, the allowance of the Proofs of Claim should have little, if any, impact on the Debtor or this bankruptcy estate. The Proofs of Claim were filed while the case was in Chapter 13 so that the claims could be paid through the Debtor's Chapter 13 plan (or outside the Chapter 13 plan if the Debtor so elected). Now the case is a Chapter 7 case.  It is unlikely the Chapter 7 Trustee is going to administer the Residential Property or Investment Property because there is no equity in those properties and there would be no benefit to the Debtor's estate.  The Chapter 7 Trustee could not make distributions on account of the Proofs of Claim from proceeds of other estate assets because the First Bankruptcy Case discharged the Debtor's personal liability on the claims asserted in the Proofs of Claim.  Accordingly, notwithstanding the allowance of the claims, it is highly unlikely any distribution would be made on account of those claims.

   d.   Request for Costs and Disgorgement of Trial Modification Payments

The Debtor requests $10,000 in costs from the Residential Prop. Servicer based on the servicer's alleged wrongdoing.  The Debtor has not persuaded the Court that the Residential Prop. Servicer engaged in conduct that would warrant the award of monetary sanctions.  The Debtor also requests disgorgement of the of trial modification payments paid while she was attempting to obtain loan modifications from the Secured Creditors.  Although the Debtor was not offered a mortgage modification by either Secured Creditor, the Debtor is not entitled to a refund.  Rather, mortgagees are typically required to make "trial payments" while the parties attempt to negotiate a modification.  The Debtor has not provided any legal basis for a refund of those payments.

III.   The Debtor's Objections to the Transfers of the Proofs of Claim are Overruled

The Court will examine the Debtor's objections to the Notice of Transfer and the notice of change of servicer filed by the Investment Prop. Servicer notwithstanding the Debtor lacks standing to raise these objections.  *See In re Moehring*, 485 B.R. 571, 577 (Bankr. S.D. Ohio 2013) (citing Fed. R. Bankr. P. 3001(e)(2); *Viking Associates v. Drewes (In re Olson)*, 120 F.3d 98, 101 (8th Cir.1997); *In re Lynn*, 285 B.R. 858, 861-63 (Bankr. S.D.N.Y. 2002)).

The Debtor contends the transfer of the Residential Property Proof of Claim is a ploy to bypass the bar date.  Bankruptcy Rule 3001(e), which governs claims transfers, contains no requirement for a notice of transfer to be filed prior to the bar date.  Further, the transfer of a proof of claim substitutes the party but does not change the nature of the claim against a debtor, and the claim, as held by the transferee, relates back to the filing date of the proof of claim. *Carnegia v. Georgia Higher Educ. Assistance Corp.*, 691 F.2d 482, 483 (11th Cir. 1982).

Therefore, the Notice of Transfer relates back to the filing date of the Residential Prop. Proof of Claim and, that claim, now held by Dwelling, is deemed timely filed.

Also, the Debtor argues that the Investment Prop. Proof of claim must be disallowed because the Investment Prop. Servicer failed to file timely a proof of claim in its own name and the notice of transfer that was filed upon the transfer of servicing from Fay to the Investment Prop. Servicer is insufficient.  As discussed above, servicers have standing to act on behalf of the holders of the secured claims, including standing to file proofs of claim and stay relief motions. *See In re Conde-Dedonato*, 391 B.R. 247, 250 (Bankr. E.D.N.Y. 2008) ("A servicer of a mortgage is clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its duties as a servicer.") (citing cases).  *See also Va Bene Trist, LLC v. Washington Mut. Bank*, 556 F. App'x 647 (9th Cir. 2014) (affirming District Court ruling that servicer could enforce lien on behalf of secured creditor); *In re Rosado-Ortiz*, 205 F. App'x 849 (1st Cir. 2006) (same).  The Debtor provides no legal authority to support her contention that Truman was not permitted to change servicers or that servicers are required to file proofs of claim in their own names.

Lastly, the Debtor argues the claim transfers violated the automatic stay; however, creditors are permitted to transfer a claim or interest against a debtor's estate to a third party without violating the stay.  *In re Lehman Bros. Holdings Inc.*, 435 B.R. 122, 133 (S.D.N.Y.), *aff'd sub nom. Suncal Communities I LLC v. Lehman Com. Paper, Inc.*, 402 F. App'x 634 (2d Cir. 2010) (quoting *Paloian v. Grupo Serla S.A. de C.V.* (*In re GGSI Liquidation Inc)*, 351 B.R.

529, 582 (Bankr. N.D.Ill. 2006), *rev'd on other grounds*,433 B.R. 19 (N.D. Ill. 2010))**.**

IV.     Rusmore/Dwelling's Motion for Relief From the Automatic Stay

Bankruptcy Code section 362(d)(1) states: "the court shall grant relief from the stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). Failure to make post-petition mortgage payments may constitute cause to modify the automatic stay. *See e.g.*, *Boissard v. Specialized Loan Servicing, LLC*, 2020 WL 9816005, at *4-5 (E.D.N.Y. Nov. 24, 2020).

The movant must make an initial showing that there is cause for relief from the automatic stay. *Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280, 1285 (2d Cir. 1990). However, the ultimate burden of proof is on the party opposing stay relief. *Id.*; *see* 11 U.S.C. § 362(g)(2). Once the movant has made an initial showing, the burden shifts to the party opposing relief to meet its burden of proof. *Id.* The movant and the party opposing relief are required to meet their respective burdens by a preponderance of the evidence. *In re RYYZ, LLC*, 490 B.R. 29, 35 (Bankr. E.D.N.Y. 2013).

The Investment Prop. Servicer contends in the Lift-Stay Motion that there is cause for stay relief because the Debtor failed to make mortgage payments due November 1, 2019 and December 1, 2019. The Debtor admits she has not paid the Investment Prop. Mortgage since 2016. (ECF. No. 89, at 5). Debtor's failure to make mortgage payments is not justified and is cause for relief from stay.[15]

---

[15]     Although not argued in the Lift-Stay Motion, relief may be granted under Bankruptcy Code section 362(d)(2) because the Debtor does not have equity in the Investment Property and it is not necessary for a reorganization. Debtor's schedules represent that the Investment Property's fair market value was $226,515.00 and the mortgage debt was $381,915.48 as of the Petition Date. The Investment Property is not necessary for a reorganization because the Debtor's bankruptcy case is a Chapter 7 liquidation and does not contemplate reorganization. *See JP Morgan Chase Bank, N.A. v. Caires (In re Caires)*, 611 B.R. 1, 7 (Bankr. D. Conn. 2020), *aff'd*, 624 B.R. 322 (D. Conn. 2021) (citing *In re Escobar*, 457 B.R. 229, 242 (Bankr. E.D.N.Y. 2011)).

IV.  <u>Conclusions</u>

Based on the foregoing:

a.  The Lift-Stay Motion is granted.  Investment Prop. Servicer is directed to submit an order within fourteen days of entry of this decision;

b.  The Investment Prop. Claim Objection is overruled.  Investment Prop. Servicer is directed to submit an order within fourteen days of entry of this decision;

c.  The Residential Prop. Claim Objection is overruled.  Residential Prop. Servicer is directed to submit an order within fourteen days of entry of this decision; and

d.  The Claim Transfer Objection and related motion to strike exhibits is denied; Residential Prop. Servicer is directed to submit an order with fourteen days of entry of this decision.



**Dated: Brooklyn, New York**
**November 15, 2021**

                                                      **Jil Mazer-Marino**
                                    **United States Bankruptcy Judge**